**DIERKS FORESTS, INC., Petitioner,**

v.

**Harrison PARNELL, Bessie Parnell and Oklahoma State Industrial Commission, Respondents.**

**No. 38189.**

Supreme Court of Oklahoma.

Oct. 28, 1958.

Tom Finney, Idabel, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for petitioner.

Ed R. LeForce, Idabel, Mac Q. Williamson, Atty. Gen., for respondents.

JACKSON, Justice.

On February 27, 1957, Elvin Roy Parnell, age 23, while employed by Jim Pollard, an independent contractor of Dierks Forests, Inc., principal employer, sustained an accidental injury arising out of and in the course of his employment resulting in his death. The accident occurred while he was engaged in cutting timber when a limb of a tree struck him across his back and neck.

On April 20, 1957, Harrison Parnell and Bessie Parnell, father and mother of deceased, filed a claim for compensation under the death benefit provisions of the Workmen's Compensation Law against Jim Pollard, independent contractor, and Dierks Forests, Inc., principal employer.

Dierks Forests, Inc., was made a party for the reason that Jim Pollard, independent contractor, carried no compensation insurance for his employees and it is contended that the principal contractor, Dierks Forests, Inc., is therefore liable.

By stipulation the issues were limited to the sole question of whether the parents of deceased were dependent upon him for support.

The trial judge found that deceased left no wife and no children but did leave as his next of kin his father and mother, the claimants herein. He also found that de-

ceased's "dependent heirs" are entitled to receive from Dierks Forests, Inc., $13,-500 to be divided equally between them after payment of claimant's attorney fees. No order was made against Jim Pollard, the independent contractor.

No appeal was taken to the Commission en banc but petition for review was brought here by Dierks Forests, Inc., to review the trial judge's order.

It is first contended by petitioner, Dierks Forests, Inc., hereinafter called Dierks, that the award is not supported by any competent evidence that claimants were dependent upon deceased and that the finding of dependency is contrary to all the evidence.

Deceased's father was 49 years of age at the time of the trial and lived with his wife in the northern part of McCurtain County. They had eight living children. Five of these children, including deceased, were living at home at the time of deceased's death on February 27, 1957. Except for six months while away at work deceased had spent his entire life in the home of his parents.

Harrison Parnell, father of deceased, testified that his deceased son, Elvin, quit school in the 7th or 8th grade; that Elvin had worked for him all of the time since quitting school, except for approximately six months; that during the time Elvin worked for witness he paid him no wages or salary; that on Saturday nights the witness would usually give Elvin five or ten dollars which Elvin would use in buying clothes, smoking tobacco, and for entertainment; that when they were away from home working together, during Elvin's minority, the witness would collect for Elvin's labor and use it in providing for the family. He also testified in effect that when Elvin had worked for others, after reaching majority, or collected and sold scrap iron, approximately one-half of his earnings were turned over to the witness or to Elvin's mother.

This witness owned 100 acres of land. Forty acres were in cultivation and 60 acres in timber. He testified that Elvin had assisted him in his farming activities as well as in the logging business. He further testified that it would have cost him approximately $35 or $40 per week to have hired another man to perform the same services that Elvin had been performing for him prior to his death; that he was not wholly dependent on his son to make all the living but that his son made part of the living, and that the same arrangement would have continued except for Elvin's death.

Mrs. Parnell, in all material respects, corroborated the testimony of her husband.

■ Dierks offered in evidence a statement signed by Mr. Parnell shortly after the fatal accident which tends to impeach the testimony given by Mr. Parnell at the trial. However, it is fundamental that the credibility of a witness is to be determined by the fact-finding body.

■ We think the evidence supports the Commission's finding of dependency. Such finding will not be disturbed when reasonably supported by competent evidence. Oklahoma State Highway Department and State Insurance Fund v. Nash, Okl., 297 P.2d 412.

■ We have held that where claimants were not wholly, but only partially dependent upon a deceased employee for support, and the employee during his lifetime made substantial contributions to their support, claimants are entitled to recover full compensation allowable under the death benefit provisions. Cimarron Telephone Co. v. Nance, 208 Okl. 622, 255 P.2d 931.

See also Okemah Publishing Company v. Aaron, Okl., 285 P.2d 410; Pawhuska Feed Mills v. Hill, Okl., 289 P.2d 671; and G. I. Construction Co. v. Osborn, 208 Okl. 554, 257 P.2d 1056.

■ It is next contended by Dierks that there was no specific finding that claimants were dependent upon deceased and that the award must be vacated as a matter of law. We find no merit in this contention. The Commission found in

paragraph two of its order that deceased left as his next of kin his father and mother. In paragraph three it found that deceased's "dependent heirs" are entitled to recover. In the same paragraph distribution of $13,500 was made to the claimants as the father and mother of deceased. We think this constitutes a finding that the father and mother of deceased were dependent upon him for support. In the fifth paragraph of the syllabus in Banning v. Peru-Lacledge Syndicate, Inc., 179 Okl. 382, 383, 65 P.2d 976, 977, it was held:

"When a full hearing has been had in a claim for compensation before the State Industrial Commission and the order or award made is supported by competent evidence, this court will not give a narrow or technical construction to the language contained in said order if the meaning and intent thereof is clear."

In Dierks' third and final proposition it is asserted that the award ordering Dierks to pay death benefits must be vacated as a matter of law because no award was made against Jim Pollard, independent contractor and employer of deceased; inviting our attention to 85 O.S.1951 § 11, and Imperial Paving Company v. Russell, Okl., 308 P.2d 278. The cited case, construing section 11 of the 1951 statutes, does hold that the award should be primarily against the independent contractor and secondarily against the principal employer. However, it must be noted that 85 O.S.1951 § 11, was amended by the Legislature in 1955. H.B. 741, S.L.1955, page 488, 85 O.S.Supp. § 11. In Subdivision 2 of said House Bill it is provided:

"2. The person entitled to such compensation shall have the right to recover the same directly from his immediate employer, the independent contractor or intermediate contractor, and such claims may be presented against all such persons in one proceeding. If it appears in such proceeding that the principal employer has failed to require a compliance with the Workmen's Compensation Law of this State by his or their independent contractor, then such employee may proceed against such principal employer without regard to liability of any independent, intermediate or other contractor. Provided, however, in any proceeding where compensation is awarded against the principal employer under the provisions hereof, such award shall not preclude the principal employer from recovering the same, and all expenses in connection with said proceeding from any *independent contractor, intermediate contractor or subcontractor* whose duty it was to provide security for the payment of such compensation, and such recovery may be had by supplemental proceedings in the cause before the State Industrial Commission or by an independent action in any court of competent jurisdiction to enforce liability of contracts." (Emphasis supplied).

In the case before us it appears by stipulation that the independent contractor did not have Workmen's Compensation Insurance in force on the day of the fatal accident. In Subdivision 1 of House Bill 741, supra, it is provided in substance that the principal employer shall be liable to employees of independent contractors in the manner specified in Subdivision 2, supra. Under the foregoing amendment claimants were authorized to proceed against the principal employer and obtain an award without regard to the liability of the independent contractor.

There is a further problem that must be considered. It will be observed that 85 O.S.1951 § 11, supra, was also amended in 1955 by Senate Bill No. 132. S.L.1955, page 486. It is further observed that Senate Bill No. 132 and House Bill 741, supra, were approved and became effective on the same day. That is, June 6, 1955. The two Bills are in irreconcilable conflict in part. In Senate Bill No. 132, in amending Section 11, of Title 85 O.S.1951, the Legisla-

ture re-enacted Subdivision 2 of Section 11 as that Subdivision appears in the 1951 statutes, requiring claimant to first exhaust his remedy by execution against the independent contractor; whereas, Subdivision 2 of Section 11 of House Bill 741, supra, provides that claimant may proceed against the principal employer without regard to liability of an independent contractor. The fact that both amendments were approved and became effective on the same day would present a troublesome question except for the clarity of the language used and the purposes of the two amendments.

■ When the title of Senate Bill No. 132 is examined it becomes apparent that the sole purpose of that amendment was to deal with dairy employees, whereas, in House Bill No. 741 the Legislature was concerned with the liability of the principal employer and other employers. It is clear from the title and body of House Bill No. 741 that the Legislature intended to repeal Subdivisions 1 and 2 of 85 O.S. 1951 § 11, as amended in 1955 by Senate Bill No. 132. In the title of House Bill No. 741 the Legislature described the act as an amendment to amend Subdivisions 1 and 2, 85 O.S.1951, *as amended.* In the body of the act it was provided that Subdivisions 1 and 2 of 85 O.S.1951 § 11, *as amended,* "be and the same are hereby further amended * * *." We do not find that Subdivisions 1 and 2 of Section 11 have been amended between 1951 and 1955, except as noted in Senate Bill No. 132 and House Bill No. 741. Therefore, it becomes clear that the Legislature in adopting House Bill No. 741 intended to amend 85 O.S.1951 § 11, "as amended" by Senate Bill No. 132.

In Imperial Paving Company v. Russell, ·Okl., 308 P.2d 278, supra, we overlooked the amendment of 85 O.S.1951 § 11. We now observe that the accident in that case occurred on September 26, 1955, and subsequent to the effective date of the amendment. The rule of law announced in the fourth paragraph of our syllabus therein is not applicable in cases arising after the effective date of the amendment, June 6, 1955. H.B. 741, S.L.1955, page 488, supra.

Award sustained.

DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and CARLILE, JJ., concur.

WELCH, C. J., dissents.