Jack STUBBLEFIELD and State Insurance
Fund, Petitioners,

v.

Cora Beatrice SEBASTIAN, Mother and de-
pendent heir of Gerald Eugene Sebastian,
Deceased; D. E. Stricklen, and the State
Industrial Commission of the State of
Oklahoma, Respondents.

No. 38457.

Supreme Court of Oklahoma.

May 26, 1959.

Mont R. Powell, Mary Elizabeth Cox, James C. Hamill, Oklahoma City, for petitioners.

Horsley, Eptom & Culp, Wewoka, Dick Bell, Seminole, Mac Q. Williamson, Atty. Gen., for respondents.

WELCH, Justice.

Cora Beatrice Sebastian filed a claim under the death benefit provisions of the Workmen's Compensation Act, 85 O.S. 1951 § 22 et seq., arising by reason of the death of her son, Gerald Sebastian. An award was made by the State Industrial Commission against D. E. Stricklen as employer and against Jack Stubblefield secondarily liable under the provisions of 85 O. S.1951 § 11. Jack Stubblefield and the State Insurance Fund, his insurance carrier, have brought this proceeding to review the award against them. They shall be referred to hereinafter as petitioners. D. E. Stricklen does not prosecute an appeal from the award.

The record discloses that Jack Stubblefield is in the termiting business in Ardmore, Oklahoma, and operates in several counties. D. E. Stricklen owns and operates a termiting business in Wewoka, Oklahoma. He likewise has certain territory assigned to him for his activities. Stricklen and Stubblefield hired their own workmen in their operations. Gerald Sebastian had worked for Stricklen on other jobs in which Stricklen was the sole employer. A few days prior to May 29, 1957, Jack Stubblefield called by telephone and asked D. E. Stricklen to go to Coalgate, Oklahoma, which was in the territory of Jack Stubblefield, and enter into a contract with a doctor at Coalgate for a termiting job. The contract was drawn in which the doctor agreed to pay $350 to Jack Stubblefield. Out of this $350, which was paid to Jack Stubblefield by the doctor in Coalgate, a substantial amount was paid to Stricklen out of which Stricklen paid his own laborers.

On May 29, 1957, while working under the house repairing the underpinning in order to termite, Gerald Sebastian was electrocuted.

It is first argued that there is no competent evidence to sustain the finding of the State Industrial Commission that D. E. Stricklen is an independent contractor of the prime contractor, Jack Stubblefield. Jack Stubblefield testified that both Stricklen and Gerald Sebastian were the employees of Stubblefield. The State Industrial Commission found the relation to be that of independent contractor and prime contractor and we sustain this finding. Stubblefield testified Stricklen shared in the profits on a fifty percent basis of what was made after paying all expenses. A check for the expenses and for part of the profit was given to Stricklen.

In Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 830, it was held there was no evidence of an independent contract between the builder and the lumber company because there was no showing that the lumber company shared in any profits of the builder, but was interested only in selling the materials to the builder. Therein it is stated:

"* * * As pointed out in the case of E. D. Bedwell Coal Co. v. State Industrial Commission, 157 Okl. 227, 11 P.2d 527:

"'A joint adventure is a special combination of two or more persons where in some specific venture a profit is jointly sought without any partnership or corporate designation.'"

We hold the evidence discloses without dispute that Jack Stubblefield shared in the profits of the contract made with the owner of the premises being repaired, and therefore Stricklen was the independent contractor of the prime contractor, Jack Stubblefield.

It is next argued there is no evidence that claimant was dependent on

Gerald Sebastian. The record discloses that Gerald Sebastian was thirty-seven years of age just prior to his death. He had never been married; his schooling ended just before he finished his final year in high school. His principal source of income was from work with a seismograph crew. When in Wewoka he made his home with his parents. His father was at the time of the award, and had been for some time, city clerk. His salary was $345 per month.

Claimant, mother of Gerald Sebastian, testified that while working in Louisiana he sent her a money order for $175 in 1956; that he bought groceries and occasionally paid utility bills and telephone bills. Two men in a local grocery store testified that Gerald Sebastian bought substantial supplies of groceries. One testified Gerald Sebastian spent as much as $60 for groceries one certain month, and substantial amounts each month that he was at home.

Claimant further testified that when away on a job he would send substantial amounts of money, not to exceed $50; that he sent $50 on one other occasion besides the $175 he had sent from Louisiana. She also testified that he performed services around the house, cleaning the house and helping her with house work. She also testified that she needed the help and financial aid given by her son and depended on it.

The father testified in answer to a direct question that he anticipated the assistance of his son in the future, especially at his age, meaning the age of the father.

▇▇▇ Under the rule announced in Cimarron Telephone Co. v. Nance, 208 Okl. 622, 255 P.2d 931; G. I. Construction Co. v. Osborn, 208 Okl. 554, 257 P.2d 1056; Botts-Hulme & Odell v. Tate, Okl., 265 P. 2d 709; Pawhuska Feed Mills v. Hill, Okl., 289 P.2d 671, and Oklahoma State Highway Department v. Nash, Okl., 297 P.2d 412, there is competent evidence reasonably tending to support the finding that claimant was dependent on Gerald Sebastian within the terms and meaning of 85 O.S.1951 § 1 et seq. In Cimarron Telephone Co. v.

Nance, supra [208 Okl. 622, 255 P.2d 931], it is stated:

"Under Title 85, Chap. 2, Sec. 7, S. L.1951, Workmen's Compensation Act, 85 O.S.1951, Sec. 22, where death is caused by an accidental injury sustained by an employee while engaged in a hazardous employment and arising out of and in the course of his employment, who leaves surviving him dependents, as that term is defined by the Act, such dependents are entitled to recover compensation in the sum of $13,500. The statute does not purport to proportion compensation allowed based upon percentage of dependency. Therefore, where claimants claiming to be dependents are not wholly but only partially dependent upon deceased employee for such support, and such employee during his lifetime makes substantial contributions to their support claimants are entitled to recover full compensation allowable under said section."

In G. I. Construction Co. v. Osborn, supra [208 Okl. 554, 257 P.2d 1057], in quoting from 58 Am.Jur. Section 162, it is stated:

"The fact that claimant up to the time of the death of her son was able to take care of herself does not necessarily preclude her from being classified as a dependent of her deceased son. In Sec. 162 Am.Jur., supra, it is said:

" 'The purpose of the statute is to provide the workmen's dependent in future with something in substitution for what has been lost by the workman's death, and, consequently, to establish dependency the applicant for compensation must show that he or she had reasonable grounds to anticipate future support from the decedent. This reasonable expectation of continuing future support and maintenance seems to be the true criterion as to who are dependents.' "

In the syllabus of the above case it is stated:

"The Death Benefit provision of the Workmen's Compensation Act should be broadly and liberally construed in determining the question of dependency."

"A finding by the State Industrial Commission of dependency under the Death Benefit provision of the Workmen's Compensation Act will not be disturbed on review where such finding is reasonably supported by competent evidence."

See, also, Dierks Forests Inc. v. Parnell, Okl., 331 P.2d 392.

There is competent evidence reasonably tending to support the finding as to dependency.

Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON and BERRY, JJ., concur.