MAX MINING COMPANY and Mid-Continent Casualty Company, Petitioners,

v.

Melvin E. HITCHCOCK, Administrator of the Estate of Benny George Hitchcock, Deceased, and The State Industrial Court, Respondents.

No. 40574.

Supreme Court of Oklahoma.

July 21, 1964.

Rehearing Denied Oct. 20, 1964.

Application for Leave to File Second Petition for Rehearing Denied Dec. 22, 1964.

Looney, Watts, Looney, Nichols & John-son, Oklahoma City, for petitioners.

Joe Henbest, Columbus, Kan., H. G. E. Beauchamp, Miami, Okl., Charles R. Nesbitt, State Atty. Gen., for respondents.

DAVISON, Justice.

This is a proceeding by Max Mining Company (employer) and Mid-Continent Casualty Company (insurance carrier), herein referred to as petitioners, to review an award under the Death Benefits provisions of the Workmen's Compensation Law, 85 O.S.1961 § 1 et seq., in favor of Melvin E. Hitchcock, Administrator of the Estate of Benny George Hitchcock, Deceased.

Melvin E. Hitchcock is the son and sole heir and beneficiary of the deceased employee. Mrs. Benny G. Hitchcock died in October, 1960. It was admitted that an accidental injury on October 4, 1961, result-ed in the immediate death of the deceased and that it arose out of and in the course of his employment.

Petitioners contend that there is no competent evidence to sustain the finding of the State Industrial Court that Melvin was a dependent within the meaning of the Workmen's Compensation Law, supra.

The record reflects that at the time of his father's death Melvin was 33 years of age and married and the father of 4 children, ages 5 to 11 years. It further discloses that seven witnesses, in addition to Melvin, testified in behalf of his claim of dependency.

It was shown that the deceased, and also his wife until several years before her death, gave substantial, continuous financial and material aid to Melvin, for the reason, among others, that Melvin was unable or incapable of adequately providing for himself and his family and often was without regular employment. It appears that for years prior to deceased's death he furnished groceries, eggs, milk, and paid some utility bills, and provided clothing for the children. In addition the deceased furnished funds to make payments on time purchases of Melvin and in particular the 20 acre tract occupied by Melvin as a home. This tract was bought by Melvin in February, 1956, with a down payment of $820 furnished by deceased. After payment of several installments and default by Melvin, the deceased made the payments and acquired the title in December, 1960, and continued to pay on a mortgage on the property. During all of this time and to deceased's death Melvin and his family occupied the tract free of rent or charge. All of the contributions from deceased were made without any obligation on Melvin to make any repayment.

The record has testimony which gives the reason or excuse for these contributions. Deceased's wife and mother of Melvin was afflicted with what was described as "St. Vitus Dance" and Melvin in his early boyhood had "blackouts." The last occurrence of this nature was when he was 23 years of age. From this and other evidence it is not illogical to conclude that the deceased regarded Melvin as being a person of limited ability who needed help and material contributions.

The record does disclose that Melvin worked for Eagle-Picher Company (mining) from 1953 to 1957 in various capacities until the mines closed down. After that he worked as a part time truck driver and at other jobs without much financial return or success. Petitioners introduced a statement signed by Melvin the day following his father's death in which he stated neither he nor any other person was dependent on the deceased for support. His explanation in effect was that his signature was secured under circumstances and at a time when he had not considered or realized the extent of his dependency upon the deceased. The statement was voluntary and was not supported by a consideration. We must assume that the Industrial Court weighed the statement along with all other competent evidence in determining the question of dependency.

■ From our examination of the record it is our opinion that there is competent evidence supporting the conclusion that deceased's contribution to the support of Melvin would have probably continued, except for the death, and that Melvin had a reasonable expectation of continuing future support from deceased.

■ Under the rule set forth in Dierks Forests, Inc. v. Parnell, Okl., 331 P.2d 392, and Boardman Company v. Eddy, Okl., 363 P.2d 821, there is competent evidence reasonably tending to support the finding that claimant was dependent on Benny George Hitchcock within the terms and meaning of 85 O.S.1961 § 1 et seq.

In Dierks Forests, Inc. v. Parnell, supra, it is stated:

"Where claimants claiming to be dependents under death benefits provision of the Workmen's Compensation Law are not wholly but only partially dependent upon deceased employee for support, and such employee during his lifetime made substantial contributions to their support and it appears that such contributions would probably have continued except for death, claimants are entitled to recover full compensation allowable under the death benefits provision."

And in Boardman Company v. Eddy, supra, we said:

"A claimant who as a 'dependent' seeks to recover death benefits under the Workmen's Compensation Act is not required to establish the status of a present total and absolute reliance upon the deceased workman for the necessities of life. * * * Partial dependence upon the deceased workman for support will authorize recovery under the Act where there is evidence of past services or contributions by the decedent, and it appears that such contributions would have probably continued except for the intervening death. * * *"

■ In G. I. Construction Co. v. Osborn, 208 Okl. 554, 257 P.2d 1056, it is stated:

"A finding by the State Industrial Commission of dependency under the Death Benefit provision of the Workmen's Compensation Act will not be disturbed on review where such finding is reasonably supported by competent evidence."

Petitioners also urge that the Industrial Court erred in allowing hearsay evidence to be introduced. Witnesses, other than Melvin, testified as to statements made by deceased concerning contributions and aid given to Melvin and that deceased and his wife regarded Melvin as being incapable of earning enough to properly support himself and family.

■ The material fact at issue was whether Melvin was a dependent within the meaning of the Workmen's Compensation Law. This required a showing that Melvin had suffered a loss by deceased's death in that the contributions would probably have continued except for the intervening death. The intention of the deceased in this regard was material to a determination of this question. The statements of the deceased as to the reason for the contributions and as evidence of his intention to continue them were competent to show they would probably have continued and to show a reason-

able expectation by Melvin of future support. The evidence was competent for this purpose. Lusk v. Phelps, 71 Okl. 150, 175 P. 756, 760, and Parkhill Trucking Co. v. Hopper, 208 Okl. 429, 256 P.2d 810. See also Stubblefield v. Sebastian, Okl., 340 P. 2d 265, 267.

Award sustained.

HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.