David HIMES, d/b/a Himes Sandblasting & Waterproofing Co., and J. E. Sampson, d/b/a Sampson Termite Control, Petitioners,

v.

STATE INDUSTRIAL COURT and Dell Nichols, Respondents.

No. 42913.

Supreme Court of Oklahoma.

March 25, 1969.

Val R. Miller, and Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for petitioners.

David L. Field, Robert Stormont, and Field & North, Enid, for respondents.

BLACKBIRD, Justice.

This is an original proceeding to review a State Industrial Court award of disability compensation to the respondent, Dell Nichols, hereinafter referred to as "claimant".

When injured, on June 23, 1967, claimant was drilling through a concrete block with what was referred to both as a "jack hammer", and a "small hand drill", in the course of termite-proofing a private dwelling for his employer, who had no workmen's compensation insurance.

At the trial, there was some question as to the identity and status of claimant's employer. The Form 3 claimant filed in said Industrial Court named both "Himes Sand Blasting & Waterproofing Co." and "J. E. Sampson dba Sampson Termite Control", as "Employer", but, in his order making the award, the trial judge found that claimant's employer, on the date of his injury, was "David Himes dba Sampson Termite Control", and entered the award accordingly.

On Himes' appeal to the State Industrial Court en banc, said court modified the trial judge's previous order by finding that J. E. Sampson and David Himes "were joint venturers under the name of Sampson Termite Control * * *" and, that J. E. Sampson and David Himes were jointly and severally liable to claimant; and said court en banc affirmed the award, as thus modified.

In their brief in support of their petition for review in this court, respondents assert that the State Industrial Court's award cannot stand for two reasons, namely: (1) Being employed in "the termite control business", claimant was not engaged in a "hazardous employment" within the meaning of this State's Workmen's Compensation Act; and (2) J. E. Sampson was neither a joint venturer with David Himes, nor an employer of the claimant.

As to "(1)" above, dealt with under their brief's "PROPOSITION 1", respondents point out that the termite control business is not one of those "hazardous employments" specifically named in the Workmen's Compensation Act, Tit. 85 O.S. 1961, § 2, and they deny that, on the basis of the evidence, it should be held to be either a "work shop" (where machinery is used) or building construction or repair, within the meaning of those terms as used in the Act. They argue: "The act of termiting a property actually has nothing to do with the structure or building itself, except incidentally. All witnesses have agreed that the primary function involved is impregnating the soil with chemicals to prevent the termites from reaching the structure or building. It does not seem possible that anyone could determine that this is an improvement, alteration or repair of the building or structure itself." Though they disclaim any contention that termite control, prevention, eradication, and/or extermination comes within the provisions of the Act excluding "Agriculture", respondents say that this business is more akin to an "agricultural function" than to building construction, or repair, since it "is generally concerned with the working of the soil around a structure or building to control access thereto by insects by way of a chemical inserted in the soil."

On the other hand, claimant contends, in substance, that the treating of a house for termites, and, at least some of the acts in-

volved in accomplishing this, come under the heading of "improving or repairing a building or structure" as this phrase is usually understood; and he points to Mr. Sampson's testimony concerning the construction work usually necessary to be done on a house to effectively guard it against termites, such as removing wooden floor braces that come in contact with the ground, and replacing them with masonry supports based four inches underground. In support of his position, claimant cites Holsey Appliance Co. v. Burrow, Okl., 281 P.2d 426, in which we held that the employment of a worker engaged in erecting a television aerial on a building comes within the definition in Sec. 2, supra, of "construction work and engineering works". Claimant also says that the Structural Pest Control Act (Chap. 386, S.L. 1967, Tit. 2 O.S. 1967 and 1968 Supp., § 3–171 et seq.) requires the drilling of holes in concrete at certain intervals and replacing, with concrete blocks, floor joists that touch the ground.

While we observe no provision of the Structural Pest Control Act, supra, specifically mentioning the replacement of floor joists, we notice that said Act's second section's definition of the term "structural pest control" specifically includes "* * * the use of * * * mechanical devices or structural modifications under whatever name known, for the purpose of preventing, controlling or eradicating insects * * in structures or on the area where structures are to be built * * *". We also notice from Mr. Sampson's testimony that termite prevention, or control, is effected, at least partially, in new houses constructed "today" (as he put it) by the installation of "caps", which apparently refers (among other devices) to the metal termite shields that are installed, between the wooden floors and masonry foundations in such homes. He further testified that the "only way you would ever have to drill a concrete block would be where the wood sill sits on the foundation wall."

■ Surely, if carpeting, installed as a substitute for a structure's finish flooring,

may be considered an integral part of its construction (Southwest Title & Trust Co. v. Norman Lumber Co., Okl., 441 P.2d 430, 435) such termite shields must also be so considered, and their installation be deemed "construction work" within the meaning of that term as used in the Workmen's Compensation Act's Section 2, supra. Furthermore, if such part of the work of constructing a new house is considered a "hazardous employment" under the Act, it would be a strange anomaly if work of a similar nature, entailing modification, replacement, or rebuilding of parts of a previously erected structure, to accomplish the same purpose of termite control, were not also regarded as "construction work". This court has already determined that the rebuilding of a structure is "construction work" within the terms of the Act (Denbo v. Roark, 196 Okl. 386, 164 P.2d 977) and similarly we think it makes no difference whether termite control is accomplished by rebuilding, or changing, parts of an already built structure, or is accomplished by incorporating termite control devices in original construction. Both are "construction work" under the liberal interpretation of the Workmen's Compensation Act enjoined upon this court by the legislative enactment itself. See Holsey Appliance Co. v. Burrow, supra. Here, we have reached conclusions in this case, similar to those indicated in the cited case, and hold that the Industrial Court did not err in its finding that the claimant was engaged in "hazardous employment * * * within the terms and meaning of the Workmen's Compensation Law * * *" at the time he was injured.

Under their PROPOSITION 2, respondents contend that the Industrial Court En Banc erred in modifying the trial judge's order by converting claimant's award into a joint and several one against Sampson and Himes. They say that the arrangement between Sampson and Himes "does not seem to fit the pattern required for a joint venture" and they take the position that only Himes may be considered an employer of the claimant.

The evidence shows that Himes has no license (referred to by claimant as a "Pesticide Applicator's permit") as is required by the Structural Pest Control Act (sec. 3-173, Tit. 2, supra) of those engaged in the business of Structural Pest Control in Oklahoma. The evidence further shows, however, that Sampson, whose business, Sampson Termite Control, is headquartered in Witchita, Kansas, does have such a license, and that Himes has operated under it at all times material to this controversy, but uses his own trucks and equipment, and hires his own employees under an arrangement governed by a written contract Sampson had earlier made with another, which was thereafter adopted, with one minor modification, by oral agreement between Sampson and Himes. Under the terms of reference used in said contract, Sampson, doing business as Sampson Termite Control, is the "Company" and Himes is the "Contractor." In the first paragraph of said contract, the Company "appoints" the contractor "to procure and treat premises pursuant to the Company's contracts and service agreements in the following territory, to-wit: THE ENTIRE STATE OF OKLA." The contract's other provisions are as follows:

"SECOND: It is expressly understood and stipulated that this is not a contract of employment, and that the contractor will operate as an independent contractor in the procuring of the premises and the treating of the premises for the term herein specified. The contractor shall be the judge of his time and hours of work. The Company considers and wants the contractor to know that he is an independent contractor and free to carry on the business of honestly presenting the chemicals used in treating premises and the service agreement of the company without misrepresentation to the prospective purchasers. It is further understood that the Company neither has nor reserves any direction, responsibility, control, or dominion over the status of the contractor in his general activities or pursuits, other than the right to question the sufficiency of the results accomplished by the contractor as measured by the requirements of this contract.

"THIRD: It is expressly stipulated that all expenses incidental to the solicitation and obtaining of jobs by the contractor shall be borne solely by the contractor. The contractor shall have no power or authority to incur or contract any liability of any kind for or in the name of the Company for which the Company could or might be liable to others, and contractors have no authority to accept cancellations of any contract or agreement or any order received by him.

"FOURTH: The contractor agrees to forward weekly contracts to the Company on forms provided by the Company for this purpose and also carry out fully the obligations and responsibilities of this contract.

"FIFTH: The contractor agrees to accept numbered contract books, numbered contract forms and service agreement forms, and to be responsible for their care and use, and the contractor further agrees upon the termination of this contract, to promptly return all unused or voided contract form books, numbered contracts and service agreement forms to the company.

"SIXTH: The contractor agrees that should his relations with the Company be discontinued for any reason whatsoever, or should this contract be terminated by either party the contractor shall make a prompt accounting to the Company, subject to the contractor's rights therein on account of commissions, for all deposits then remaining in his hands and for any outstanding indebtedness by him to the Company and agrees the Company may withhold any further payment of commissions earned until all of said customer's accounts are completed.

"SEVENTH: The contractor agrees in all cases to use only contract forms, and service agreement forms supplied by the Company, and which are the property of

the Company and to be returned as aforesaid.

"EIGHTH: On all jobs procured by the contractor the contractor shall receive a commission of 80%. The contractor shall furnish all materials and labor. * * *."

The feature of the above quoted form contract that was modified orally, when adopted by Sampson and Himes, pertained to the commission Himes was to receive on each termite job performed. The undisputed testimony was that this commission was 85%, instead of the 80% set forth in the above writing.

From Himes' testimony at the trial, it appeared that, though the trucks used by the termite control crews had "Himes Sandblasting" signs, as well as "Sampson Termite Control" signs on them, the former were merely to advertise his sand blasting business, and the trucks were used exclusively in the termite control business. Both this and the printed form "Sampson Termite Control" contract which specified the work to be done on the job on which claimant was involved (a copy of which contract was introduced in evidence as claimant's Exhibit "G") and presumably used for all termite control jobs, supports Sampson's testimony that he had "authorized Mr. Himes" to use his "trade name" in this State. Insofar as the evidence shows, no one makes agreements with the owners of property to be termite-treated by the Himes organization, except as a representative of, and for and on behalf of, Sampson Termite Control Company. Although Sampson's testimony was to the effect that he has nothing to do with selection, or control, of the employees working with the Himes trucks and equipment on the termite jobs they procure, that the fees for these jobs are collected by Himes, rather than by him, and that, as to the job involved here, he (Sampson) was paid his percentage of the fee, after the job was done and the money was collected, nowhere in his testimony did he deny that under his above quoted contract with Himes, all such jobs were undertaken with the property owners by, and on behalf of, Sampson Termite Control Company, rather than in the name of Himes, or any other person or contracting entity. Nor did he deny, though he characterized his relationship with Himes as "in the nature of a franchise", that, under his above-quoted contract with Himes, he could require that the total amount of all fees collected for termite control jobs be transmitted to him, before deduction of Himes' 85%, or any other fraction thereof.

■■ Respondents contend that the relationship of Sampson Termite Control Company with Himes is more like that of the filling station lessor, Continental Oil Company, with the station's lessee, Orville Jantzen, in Barber v. Continental Oil Co., Okl., 325 P.2d 949, than that of a joint adventurer (as the Industrial Court en banc held) and that Sampson and his Company should be exonerated from liability for claimant's injury, here, as the Oil Company was relieved from liability for Barber's injury, there. We do not think that the Barber case is applicable to the situation here. Since, under the particular contract setting forth the respective rights, and obligations, of Sampson and Himes, with and between each other, Sampson's income from Himes' activities in the termite control business is based solely upon *gross* receipts, and contemplates no mutual, or reciprocal, sharing of expenses or losses, and the two parties have no joint interest in any property (unless their mutual benefit from Sampson's license being kept in force, and effect, might be considered an interest in property) even if we were to ignore the absence of the "loss-sharing factor" which—contrary to some jurisdictions (see Goodwin v. Camp, C.C.A. 6th Cir., 295 F. 785, discussed in the annotation at 48 A.L. R. 1055, 1071, 1072)—this one has been recognized as not requiring this factor (see Albina Engine & Machine Works, Inc. v. Abel, C.C.A. 10th Cir., 305 F.2d 77, 82, and Kasishke v. Baker, C.C.A. 10th Cir., 146 F.2d 113, 115, citing E. D. Bedwell Co. v. State Industrial Commission, 157 Okl. 227, 11 P.2d 527) there are still not suf-

ficient elements of a joint adventure in the two parties' relationship to make it such, under our previous decisions. See Pfleider v. Smith, Okl., 370 P.2d 17, 20, cited by respondents. In our opinion the relationship between the respondents was in the nature of that of a prime contractor and an independent contractor. Therefore, Himes is primarily liable and Sampson is secondarily liable for payment of the award involved here. See Tit. 85 O.S.1961, § 11; Stubblefield v. Sebastian, Okl., 340 P.2d 265; Imperial Paving Co. v. Russell, Okl., 308 P.2d 278. The order herein reviewed is therefore modified in accord with this determination, and the State Industrial Court is directed to enter the award against Himes, as primarily liable, and Sampson and/or Sampson Termite Control as secondarily liable. As thus modified, the award is hereby sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, JACKSON, LAVENDER and McINERNEY, JJ., concur.