**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Daniel G. BAIRD, Defendant–Appellant.**

**No. 99CA2221.**

Colorado Court of Appeals, Div. V.

Nov. 7, 2002.

Certiorari Denied March 24, 2003.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2002.

* Justice RICE does not participate; Justice MARTINEZ and Justice BENDER would grant as to the following issues:

Whether the trial court's failure to give defense counsel an opportunity to contribute to the juror notebooks, or review them before trial, was error under Crim.P.16(IV)(f), or prejudiced petitioner's right to a fair trial.

Whether the trial court's discussion with a juror regarding the juror's travel plans without counsel present and allowance of deliberations past midnight deprived petitioner of his right to counsel and a fair trial.

Ken Salazar, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Lisa Dixon, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Daniel G. Baird, appeals the judgment of conviction entered on jury verdicts finding him guilty of one count of attempted second degree murder, an accompanying count of crime of violence, and two counts of first degree assault. Defendant also appeals his sentence. We affirm in part, vacate in part, and remand for correction of the mittimus.

On September 22, 1996, at approximately 11:00 p.m., after defendant and his wife had gone to bed, the wife's former husband attempted to return their child to defendant's home located in a rural neighborhood. A deputy sheriff followed the former husband to the home and escorted the child to the door. The deputy knocked loudly enough to awaken defendant and his wife, but did not identify himself as a police officer. The deputy was carrying his flashlight, but did not direct his headlights at the house or turn on his overhead light bar.

Defendant, purportedly in fear for his safety and that of his family, picked up a decorative sword and proceeded to the door. Holding the sword in front of him, defendant opened the door, and the sword struck the deputy's chest. Not realizing it was a sword, the deputy pushed it away with his right hand, sustaining cuts that required twenty-two stitches.

A state trooper responded to the deputy's call for assistance and, after observing the scene and speaking with defendant, placed defendant under arrest.

After jurors were sworn, but before opening statements, one juror became ill and was

excused. No alternate juror was available, and despite his attorney's advice to request a mistrial, defendant agreed to proceed with eleven jurors.

Following trial, defendant was sentenced to twelve years imprisonment for each count, with the sentences to run concurrently.

## I. Defendant's Statements

Defendant contends that the trial court should have suppressed his statements to the trooper because they were made during a custodial interrogation without the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and because they were not made voluntarily. We disagree.

### A. Custodial Interrogation

■ We first conclude that defendant's statements were not made during a custodial interrogation.

As a preliminary matter, we note that defendant requested a hearing on voluntariness under *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and that the trial court made no findings as to custodial interrogation.

■ For *Miranda* to be applicable, the suspect must be in custody and the statement must be the product of a police interrogation. *People v. Reddersen,* 992 P.2d 1176 (Colo.2000).

■ Statements made during a custodial interrogation are admissible only if the person making them has been properly advised of his or her rights and if the person has made a knowing, intelligent, and voluntary waiver of those rights. *People v. Rivas,* 13 P.3d 315 (Colo.2000); *People v. Harrison,* 58 P.3d 1103, 2002 WL 1040277 (Colo.App. No. 01CA0147, May 23, 2002).

■ The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police, other than those normally attendant to arrest and custody, that the police should know are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *People v. Taylor,* 41 P.3d 681 (Colo.2002). However, an on-the-scene investigation or questioning that enables an officer to determine what has happened and who has been injured is not an interrogation under *Miranda. People v. Denison,* 918 P.2d 1114 (Colo.1996).

Here, upon entering defendant's residence, the state trooper asked defendant, "What happened?" According to the trooper's testimony at trial, defendant responded:

> He said he heard a pounding at the door. We were in bed. I had a sword to protect my family. I thought it was her ex-husband. I thought it was her ex-husband—I'm sorry—I thought it was her ex-husband. He's a brown belt in Karate. He sometimes carries a gun. I did not mean to stab the deputy.

Defendant denied making these statements.

Defendant contends that when the trooper asked "what happened," the trooper had already determined that a crime had been committed and that defendant was a suspect. Defendant also asserts that he was not free to leave because the deputy had at one point drawn his gun and later told him to stay in the house, rather than go outside and confront the ex-husband. We are not persuaded.

■ The trooper's question constituted an on-the-scene investigation. *See People v. Denison, supra.* However, even if the question is viewed as interrogation, we conclude that defendant was not in custody.

■ The question of custody turns on an objective assessment of whether a reasonable person in the suspect's position would believe himself or herself deprived of freedom of action to the degree associated with a formal arrest. To determine whether a person is in custody, we consider a number of factors including the time, place, and purpose of the encounter, the persons present, the words spoken, the officer's tone of voice and general demeanor, the length and mood of the interrogation, any limitation of movement or other form of restraint, responses to questions asked by the defendant, directions given to the defendant, and the defendant's respons-

es. *People v. Matheny,* 46 P.3d 453 (Colo. 2002); *People v. Taylor, supra; see People v. Mangum,* 48 P.3d 568 (Colo.2002).

Determining whether a person is in custody for *Miranda* purposes is a mixed question of law and fact. *People v. Matheny, supra.*

While the trial court here made no findings on custody, the following facts are undisputed. The question was asked in defendant's home in the middle of the night, after an officer had been injured. Except for being told by the deputy not to go outside when defendant indicated he wanted to get the ex-husband off his property, defendant was not restrained or limited in his movement. While two officers were present, one was injured, and at the time of the question neither officer had a weapon drawn. Only one short question was asked, and after answering the trooper, defendant refused to be arrested in his home. This refusal strongly indicates that defendant did not believe himself to be in custody at the time of the trooper's question.

We therefore conclude defendant's statements were not the product of a custodial interrogation, but rather responses to an appropriate on-the-scene investigation.

### B. Voluntariness

■ Nor did the trial court err in ruling that defendant's statements to the trooper were voluntary.

■ A statement obtained from a defendant is admissible only if it was voluntary. *People v. DeBaca,* 736 P.2d 25 (Colo.1987).

■ Whether a statement is voluntary depends on the totality of the circumstances, which must demonstrate that the accused's statement is the product of his or her free and rational choice. *People v. Taylor, supra; People v. Blankenship,* 30 P.3d 698 (Colo. App.2000).

■ The ultimate question is whether the defendant was compelled by the police to make a statement. *People v. Rivas, supra.* The burden is on the prosecution to establish by a preponderance of the evidence that the statements were made voluntarily. *People v. Taylor, supra.*

Defendant contends that the deputy had told him he was not under arrest, thereby impliedly promising that defendant was immune from criminal liability and was a witness rather than a suspect. Accordingly, defendant asserts he was tricked into making the statements. We reject this contention.

A reviewing court is bound by the trial court's findings of fact on voluntariness. *People v. DeBaca, supra.*

Here, the trial court's findings that there were no "threats, violence, promises or any undue influence" are supported by the record, which contains no evidence of coercive police activity. After the deputy was injured, defendant had dressed, rendered assistance, and waited with the deputy for help to arrive. When the trooper arrived, defendant was in his own home, and he had been told he was not under arrest. He was not under any physical restraints, and he had been awake for approximately half an hour.

Thus, we conclude that the trial court properly ruled that defendant's statement was voluntary.

### II. Eleven–Member Jury

■ Defendant next contends that the trial court should have ordered a mistrial when one of the twelve jurors became ill, leaving only eleven. Specifically, he asserts that his waiver of his right to twelve jurors was not in writing, as required by statute, and therefore, he was deprived of his substantive right to a fair trial. We disagree.

■ A trial court has broad discretion in deciding whether to grant a mistrial, and its decision will not be overturned absent a gross abuse of discretion and prejudice to a party. A mistrial is a drastic remedy and is warranted only if the prejudice to the defendant cannot be remedied by other means. *People v. Fears,* 962 P.2d 272 (Colo.App. 1997).

In Colorado, every person accused of a felony has a statutory right to be tried by a jury of twelve. *See* § 18–1–406(1), C.R.S. 2002. This right may be waived if a juror becomes unable to serve.

If no alternate juror is available to replace the juror, the parties at any time before verdict may stipulate in writing with court approval that the jury shall consist of any number less than twelve, and the jurors thus remaining shall proceed to try the case and determine the issues unless discharged by the court for inability to reach a verdict.

Section 16–10–106, C.R.S.2002.

■■■■■ A statutory right may be waived by counsel's statements. *See People v. Allen,* 744 P.2d 73 (Colo.1987). When defense counsel stipulates to a jury of less than twelve in open court and on the record, the requirement of Crim. P. 23(a)(7) that the stipulation be in writing is met. *See People v. Waters,* 641 P.2d 292 (Colo.App.1981); *see also People v. Chavez,* 791 P.2d 1210 (Colo.App.1990)(holding that counsel's verbal request for six-person jury, in presence of defendant, was sufficient to waive statutory right to full jury).

Here, the record reflects that the trial court advised defendant of his right to a jury of twelve persons and inquired whether defendant was giving up that right freely and voluntarily. Defendant, in open court, knowingly, voluntarily, and with advice of counsel, waived his right to twelve jurors.

To the extent that he asserts he rejected his counsel's advice because he could not afford to pay the additional attorney expenses associated with a new trial, defendant did not raise this issue in the trial court until his motion for new trial. Thus, we do not address that issue here. *See People v. Williams,* 33 P.3d 1187 (Colo.App.2001).

### III. Jury Notebooks

We also reject defendant's contention that the trial court's failure to give defense counsel an opportunity to review or contribute to the jury notebooks resulted in the inclusion of materials that encouraged deliberation before the end of the trial, shifted the burden of proof, and prejudiced defendant in violation of his right to a fair trial.

Crim. P. 16(IV)(f), which was adopted January 1, 1999, only four months before this trial, states:

Juror notebooks shall be available during all felony trials and deliberations to aid jurors in the performance of their duties. Counsel shall confer about the items to be included in juror notebooks and, by the pre-trial conference or other date set by the court, shall make a joint submission to the court of items to be included in a juror notebook.

The rule provides no guidance when the jury receives notebooks developed in violation of the rule.

Here, although the record indicates the jury notebooks were destroyed after the trial, it is undisputed that the notebooks were not jointly submitted to the court after conference between defense counsel and the prosecution. As the trial court was explaining the purpose of the notebooks to the jury, defense counsel, who was unaware of the new rule, interrupted and asked whether the notebooks contained anything except blank paper. The trial court did not inform counsel at that time that the notebooks contained jury instructions and a copy of the amended information. Although the court advised defense counsel of their contents during a break in the cross-examination of the prosecution's first witness, defense counsel made no further inquiry.

Defense counsel was allowed to take a notebook home for examination after the first day of trial. The next day he objected that the notebook indicated jurors could deliberate before the case was presented to them, and that it included the charges and instructions but not defendant's theory of the case. However, he did not request a mistrial, and at one point stated, "I am not challenging those issues at this time."

### A. Premature Deliberations

■■■■■ Defendant contends that the notebooks invited the jurors to engage in premature deliberations and that the jurors did, in fact, do so. While that information in the notebooks was error, we find no basis for reversal.

■■■■■ The relevant jury standards do not authorize such early deliberations in criminal cases. *See People v. Preciado–Flores,* ──

P.3d ——, 2002 WL 31357331 (Colo.App. No. 99CA2533, Oct. 10, 2002); *cf.* R.L. Kourlis & J. Leopold, *Colorado Jury Reform,* 29 Colo. Law. 21 (Feb.2000).

Here, the record indicates the notebooks contained an instruction that incorrectly advised the jurors they could discuss the case before the trial concluded. However, during voir dire, the trial court instructed the jurors not to discuss the case until it was submitted to them for deliberations, and it repeated these instructions throughout the remainder of the trial. Apparently confused by the discrepancy, at the close of evidence the jurors asked the trial court for clarification and were again instructed not to deliberate until the trial was completed.

■ If a jury is not sequestered, an admonitory instruction ensures that the jurors remain impartial and free from outside influences by impressing upon them their duty to decide the guilt issue solely on the evidence presented in court. *People v. Vialpando,* 809 P.2d 1082 (Colo.App.1990).

Defendant relies on *Lybarger v. People,* 807 P.2d 570 (Colo.1991) and *Barnes v. People,* 735 P.2d 869 (Colo.1987) for the proposition that when a jury receives two conflicting instructions, the fact that one instruction contains a correct statement of the law does not cure the error created by the incorrect and prejudicial statement of the law. However, those cases are distinguishable because the conflicting instructions there did not address jury deliberations. Further, the instructions in those cases were given only once, at the same time, and without subsequent correction. Here, the jury was repeatedly given the correct information, and the jury recognized the discrepancy and sought and received clarification.

■ Further, a conviction will not be overturned and a new trial granted based upon allegations of juror misconduct unless the defendant affirmatively establishes that the misconduct occurred and that he or she suffered actual prejudice as a result. *See People v. Garcia,* 752 P.2d 570 (Colo.1988).

■ Instructional errors that do not affect a defendant's substantial rights or prejudice his or her defense are harmless. *People*

*v. Rodriguez,* 914 P.2d 230 (Colo.1996); *People v. Ferguson,* 43 P.3d 705 (Colo.App.2001); *see* Crim. P. 52.

Here, we conclude any error was rendered harmless by the court's correct instructions.

### B. Defendant's Case

■ Defendant also contends that the notebooks stated that the defendant always presents a case and testifies. We agree that this information was erroneous in the context of a criminal trial. However, here, defendant presented a case and testified. Therefore any misunderstanding on the part of the jury would not have been prejudicial.

### C. Failure to Confer

■ Defendant further contends that the trial court distributed the notebooks without allowing defense counsel to review or contribute to them. However, defense counsel was allowed, mid-trial, to take home a juror notebook, and he made his objections the following day. He did not request any addition to the notebooks. Further, the court instructed the jury on defendant's theory of the case, and his counsel was allowed to argue his theory before the jury.

Thus, any error in the lack of a timely conference or review of the notebooks was harmless.

### IV. Victim's Testimony

■ Nor do we agree with defendant's contention that reversal is required because the trial court permitted the victim to testify, without being qualified as an expert, that the sword would have hit his heart but for his body armor.

Under CRE 701, when a witness is not testifying as an expert, his or her testimony in the form of opinions or inferences must be (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Officer testimony is objectionable when it is essentially expert testimony improperly admitted under the guise of lay opinion. *People v. Stewart,* 55 P.3d 107 (Colo.2002).

Here, the deputy testified, over defendant's objection, "There is no doubt in my mind if I did not have my body armor with the trauma plate in it that the sword would have penetrated my heart." However, even if this statement were erroneously admitted without qualifying the witness as an expert, it was harmless in view of the other evidence describing this contact. There is no dispute the sword was very sharp, and it contacted the deputy in the area of his heart. According to the deputy, the contact was of sufficient force that it pushed him backwards.

## V. Sufficiency of Evidence

Contrary to defendant's contention, the evidence was sufficient to support his convictions for attempted second degree murder and the accompanying crime of violence count, as well as first degree assault with a deadly weapon. However, because we conclude that one of defendant's two convictions of first degree assault must be vacated, we do not address his contention that the evidence was insufficient to support his conviction for first degree assault with extreme indifference.

When a defendant asserts that the evidence was insufficient to support a conviction, we review the evidence as a whole and in the light most favorable to the prosecution to ascertain whether a reasonable juror could conclude that the prosecution proved the challenged element of the charged offense beyond a reasonable doubt. *See Kogan v. People,* 756 P.2d 945 (Colo.1988).

### A. Attempted Second Degree Murder

■ Contrary to defendant's argument, the evidence was sufficient to prove that he knew that the deputy was standing just outside his door and that death was "practically certain" to result by opening the door and holding the sword in front of him.

"A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." Section 18–2–101(1) C.R.S.2002.

A person commits the crime of second degree murder if "the person knowingly causes the death of a person." Section 18–3–103(1), C.R.S.2002. "A person acts 'knowingly' or 'willfully,' with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." Section 18–1–501(6), C.R.S.2002.

Both parties agree that the sword was sharp and that defendant did not swing it. Although defendant testified that the deputy "ran into his sword," the deputy testified that after the door was opened, he "had gotten poked in the chest" and "was being pushed back." Thus, the jury was free to accept the deputy's testimony and find that defendant used the sword in a manner that was "practically certain" to cause death. *See People v. Medina,* 185 Colo. 183, 522 P.2d 1233 (1974)(court will neither weigh the evidence nor appraise the credibility of witnesses).

We therefore conclude there was sufficient evidence to support defendant's conviction of attempted second degree murder.

### B. First Degree Assault Deadly Weapon

■ Further, there was sufficient evidence to prove the intent element of first degree assault with a deadly weapon.

A person commits the crime of assault in the first degree with a deadly weapon if "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." Section 18–3–202(1)(a), C.R.S. 2002.

"Serious bodily injury" means:
bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

Section 18–1–901(3)(p), C.R.S.2002.

Here, the deputy's injuries consisted of several cuts on his right hand. The severity of the injuries was demonstrated by the loss of blood, as testified to by defendant and the

deputy, as well as the need for twenty-two stitches to close the wounds. The officer testified that he could see the bones and tendons. Thus, there was evidence of a substantial risk of serious permanent disfigurement or impairment of the function a part of the victim's body.

Further, when viewed in the light most favorable to the prosecution, the deputy's testimony that the sword struck him with enough force to make him step back was sufficient evidence for the jury to conclude that defendant possessed the requisite intent to cause serious bodily injury. *See People v. Collie,* 995 P.2d 765 (Colo.App.1999)(defendant's intent can rarely be proved other than by circumstantial or indirect evidence).

### C. One Victim, One Conviction

■ Because the record reflects only one victim and one act, we conclude that defendant's conviction for first degree assault with extreme indifference must be vacated.

By separate order, we requested both parties to submit simultaneous briefs addressing the following question, "Can defendant be convicted of two counts of first degree assault when there is only one victim and one criminal act?" The order referred the parties to *People v. Moore,* 877 P.2d 840, 845 (Colo.1994), in which the supreme court, citing *People v. Lowe,* 660 P.2d 1261 (Colo. 1983), stated, "If there is only one victim, and one criminal act, the defendant can be convicted of only one count of assault."

In response, the People concede that under the reasoning of *Lowe,* only one conviction of first degree assault should be entered. The People admit "it would appear that the two forms of assault are simply alternative ways of proving the same offense—first degree assault."

We agree and, in view of our disposition of defendant's conviction for first degree assault by a deadly weapon, we conclude that defendant's conviction for extreme indifference first degree assault must be vacated. In doing so, we express no opinion whether the evidence is sufficient to support that conviction or whether that conviction is inconsistent with his conviction for first degree assault with a deadly weapon, as defendant contends.

Both convictions for first degree assault are class three felonies. *See* § 18–3–202(1)(a) and (c), C.R.S.2002. A defendant convicted pursuant to these provisions must be sentenced in accordance with the provisions of § 18–1.3–406, C.R.S.2002. *See* Colo. Sess. Laws 1990, ch. 128, § 18–3–202(2)(c) at 986. Because defendant received the same concurrent sentence for each of his convictions, regardless of which conviction is vacated, his term of imprisonment will not be affected.

### D. Self–Defense

■ Defendant next contends that his actions were consistent with his claim of self-defense and that the prosecution failed to disprove that affirmative defense beyond a reasonable doubt. We disagree.

Section 18–1–704(1), C.R.S.2002, provides in pertinent part that with certain exceptions,

a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree force which he reasonably believes to be necessary for that purpose.

Here, as noted below, the court instructed the jury on self-defense. Further, defendant argued his position at trial and included it in his theory of the case instruction. The prosecution presented evidence that defendant was the aggressor, and the jury was instructed that the People's burden was proof beyond a reasonable doubt. However, there is no evidence that the deputy was engaged in the use or imminent use of unlawful physical force. The deputy knocked on the door, and while he did not identify himself, he did not draw his weapon until after he was injured by the sword. Further, defendant opened the door and pointed the sword without first inquiring of the deputy's intent.

Accordingly, there was evidence from which the jury could conclude that defendant's actions were not in self-defense or defense of others.

## VI.   Tendered Jury Instructions

We also reject defendant's contention that the denial of his tendered jury instructions requires reversal.

A defendant is entitled to an instruction on his or her theory of the case if there is any evidence in the record to support it. *People v. Gracey*, 940 P.2d 1050 (Colo. App.1996). However, a trial court may refuse an instruction if it is argumentative, unduly emphasizes particular evidence, or contains statements not supported by the evidence. *See People v. Bowring*, 902 P.2d 911 (Colo.App.1995). Nor is the court required to instruct the jury on the defendant's theory in the particular language tendered by the defendant. *People v. Gracey, supra.*

### A.   Theory of Defense Instruction

Here, the trial court gave the following part of defense counsel's proffered theory of defense instruction:

> You are instructed that it is the defendant's theory of the case that he is not guilty of any of the crimes charged. It is the defendant's theory that the injury to [the deputy] was the product of a series of combined faulty judgments including the following: The Baird household was not alerted; the child ... was being returned without notice; the Park County Sheriff's Department did not notify the Baird household that the child was being returned by a deputy; and ... [the deputy] failed to properly identify himself by verbal announcement or by illumination, or by horn or otherwise.
>
> It is the defendant's theory that the defendant's actions were reasonable and lawful. The defendant asserts that he intended to defend, not offend.

Concluding that the following portions were unduly argumentative, the court excised this language:

> ... as indicated by their having gone to sleep and their state of disrobe;
>
> The problem was complicated by the deputy grasping an item when he did not know what it was and, of course, by the defendant's reaction to the shock of being awakened, the fear of an unannounced late night visitor, and the need to take precaution to protect his wife and infant son from any impending harm.

Because the excised portions were unduly argumentative, we perceive no abuse of discretion by the court.

### B.   Self–Defense Instruction

Nor did the court err in instructing the jury on self-defense.

Defense counsel tendered the following self-defense instructions:

> One is entitled to act on appearances in using a deadly weapon to defend himself but the appearances must be such as, taking into consideration circumstances at the particular instant, would have caused a reasonable and prudent man to use such weapon for his protection.
>
> When a person has reasonable grounds for believing and does in fact actually believe that danger of his being killed or of receiving great bodily harm is imminent, he may act upon such appearances and defend himself even to the extent of taking human life when necessary although it may later turn out that the appearances were false or although he may have been mistaken as to the extent of the real or actual danger.

The trial court rejected these instructions without explanation, but gave the following self-defense and defense of others instruction, which stated in pertinent part consistent with CJI–Crim. 7:16 (1983):

> It is an affirmative defense to each of the crimes charged that the defendant used physical force upon another person
>
> 1.   in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and
>
> 2.   he used a degree of force which he reasonably believed to be necessary for that purpose.

The trial court also gave the following mistake of fact instruction based on CJI–Crim. 7:02 (1983):

> It is an affirmative defense to each of the crimes charged that the defendant en-

gaged in the prohibited conduct under a mistaken belief of fact, if such mistaken belief of fact negates the existence of a particular mental state essential to the commission of the offense.

The self-defense instruction given here is almost identical to that given and approved in *Beckett v. People,* 800 P.2d 74 (Colo.1990), and we find no error.

### VII. Juror's Travel Plans

■ Defendant finally contends that the trial court's efforts to accommodate a juror's travel plans by permitting deliberations to extend past midnight deprived defendant of a fair trial. He asserts that the juror's plans gave her a "personal motive to rush the verdict." We do not agree.

■ Defendants have a constitutional right to due process and a fair trial by an impartial jury. *See* U.S. Const. amends. V, VI, XIV; Colo. Const. art. II, §§ 16, 25. However, trial courts have broad discretion in conducting and scheduling trials. *See People v. District Court,* 825 P.2d 1000 (Colo. 1992); *see also Mills v. Tinsley,* 314 F.2d 311 (10th Cir.1963)(holding that the length of time a jury may be kept together for deliberation is discretionary with the trial court).

Here, the jury began deliberating at approximately 5:00 p.m. on Thursday. Despite defense counsel's requests to excuse the jury for the evening, the jury remained until after midnight. Because one member of the jury had a scheduled plane flight the following morning, if the jurors had been excused for the evening, they could not have been reconvened until the following Wednesday.

There is no indication in the record that the juror's plans affected the verdict. When the trial court decided to excuse the jurors for the night, the bailiff reported that they were voting and had asked to be allowed to continue. Sometime after midnight, the jury returned its verdict.

We recognize the trial court's broad discretion in conducting and scheduling trials. *See People v. District Court, supra; People v. Angel,* 790 P.2d 844 (Colo.App.1989). It is not good judicial practice to hold unnecessarily long daily sessions of jury trials, and night sessions of such trials should not be encouraged. *See Oertle v. United States,* 370 F.2d 719 (10th Cir.1966). However, we cannot conclude that prejudice is inherent in the deliberations at issue here.

The court set no time limit and gave no "time-fuse" instruction. *See Allen v. People,* 660 P.2d 896 (Colo.1983)("time-fuse" instruction urging the jury to complete its deliberations within a given time limit constituted plain error and required reversal). Further, the court instructed the jury that "the verdict must represent the considered judgment of each juror." We presume that the jury followed the court's instructions, *see People v. Dunlap,* 975 P.2d 723 (Colo.1999), and defendant has failed to demonstrate an abuse of discretion.

The judgment of conviction and sentence for first degree assault by extreme indifference are vacated. In all other respects, the judgment and sentence are affirmed, and the case is remanded for correction of the mittimus.

Judge ROTHENBERG and Judge TAUBMAN concur.