The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Dennis Joseph VALDEZ,
Defendant–Appellee.

No. 98SA214.

Supreme Court of Colorado,
En Banc.

Dec. 7, 1998.

Stuart A. Vanmeveren, District Attorney, Eighth Judicial District, Mitchell T. Murray, Deputy District Attorney, Fort Collins, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Kathryn Gilbert, Deputy State Public Defender, Denver, for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

The prosecution brought this interlocutory appeal pursuant to C.A.R. 4.1 to challenge a district court order suppressing statements made by the defendant, Dennis Valdez, during a custodial interrogation by two police officers. The district court held that, under the totality of the circumstances, the defendant's statements were involuntary. We reverse the order of suppression.

## I.

The defendant is charged with two counts of sexual assault on a child in violation of section 18–3–405, 6 C.R.S. (1998), and one count of enticement of a child in violation of section 18–3–305, 6 C.R.S. (1998). On November 4, 1997, the Loveland Police were called to investigate the allegations of two young girls who claimed that Valdez had sexually assaulted them. In their statement to police, F.J., age eight, and K.S., age seven, reported that they had been playing hide-and-seek in Valdez's apartment building when they decided to ask Valdez whether they could use his bathroom. Valdez answered the door and let them in to use the bathroom. While the girls were leaving his apartment, Valdez stopped them and asked them if they wanted to earn some money. They then followed Valdez to his truck, which was parked near the building. When they arrived at the truck, Valdez gave them seventy-five cents, then proceeded to put his hand inside one girl's pants, touching her genital area. The other child claimed that Valdez put his hand under her shirt and touched her breasts. The girls immediately reported the incident to their families.

On November 6, 1997, the police arrested Valdez on an unrelated warrant. Evidence presented at the preliminary hearing established that Officer Chuck Sutterfield began interrogating Valdez at 8:21 p.m. At that time, Sutterfield was dressed in street clothing and was not armed. Before interviewing Valdez, Sutterfield advised him of his Miranda rights. Valdez signed a written waiver of his rights.

Officer Sutterfield testified that after Valdez waived his rights, Sutterfield advised Valdez that he was a suspect in the alleged assault of two girls in Valdez's neighborhood. For about ten seconds, Valdez sat silently, at which point Sutterfield asked Valdez if he cared to respond to the allegation. Valdez only replied, "No." When Sutterfield asked Valdez if he wished to continue talking, Valdez indicated that he wanted to proceed with the interview. The officer then asked Valdez if the girls' allegations were true. Valdez responded, "I don't think so."

After this initial exchange, Valdez began evading Sutterfield's questions. Whenever Sutterfield asked Valdez a direct question regarding the allegations, Valdez responded with unrelated stories about his wife, his children, and his religious life. At one point during this conversation, Sutterfield asked Valdez if he intended to be truthful during the interview. Valdez only responded, "Maybe."

During the course of the interview, Valdez acknowledged that the girls had visited his apartment to use the bathroom on the day in question. However, Valdez claimed that he walked out of the apartment while they were in the bathroom and did not see them again.

Sutterfield admitted that he ultimately became frustrated with Valdez's evasive responses. In fact, Sutterfield testified that he discontinued the interrogation because Valdez was being "deceitful," then walked out of the room. Sutterfield's entire interview with Valdez lasted between twenty and twenty-five minutes.

Five minutes after Sutterfield left Valdez, Officer Steven Crowe entered the interview room. Although Crowe was wearing his uniform, he was unarmed. After reminding Valdez of his constitutional rights, Crowe asked Valdez if he wished to discuss the allegations further. Valdez agreed to speak with Crowe about the allegations. During the interview, Valdez told Crowe that he sometimes allowed children from his neighborhood to play in his truck. Crowe asked Valdez whether he could have touched the girls accidentally. Valdez did not respond to the question and changed the subject. Crowe then asked Valdez if someone could have seen him lifting up the girls and misconstrued it as inappropriate touching. Valdez responded, "It could have happened that way."

When Crowe left the room to get a glass of water for Valdez, Crowe slipped a tape recorder into his jacket pocket. As a result, part of Crowe's interview with Valdez was tape-recorded. During this portion of the interview, Valdez told Crowe that he liked talking to Crowe because he felt that Crowe understood him better than Sutterfield. Valdez further stated that he had "argued" with Sutterfield because Sutterfield was condemning him for something he did not do. Valdez also complained about Sutterfield's interview techniques. He claimed that Sutterfield asked him questions in rapid succession and did not allow him a "chance to try to think about anything."

At one point during Crowe's interview, Valdez expressed a desire to terminate the questioning. Valdez stated, "Just let me get some sleep.... I just want to think about everything." While Crowe acknowledged Valdez's request, he continued to interrogate him. Crowe's interview of Valdez lasted for approximately one hour.

Throughout the course of both interviews, Valdez never admitted any wrongdoing. He consistently denied having had any inappropriate physical contact with either child. Nevertheless, the prosecution seeks to introduce several statements that Valdez made during these interviews, including: (1) his three initial responses to Sutterfield when he was confronted with the sexual assault allegations; (2) his evasive responses to the officers' questions regarding the incident; (3) his admission that the girls had been to his apartment to use the bathroom; (4) his acknowledgement that the whole incident may have arisen from a misunderstanding; and (5) his statement that he sometimes allowed neighborhood children to play in his truck. None of these statements were made after Valdez's request to terminate the interrogation.

Valdez moved to suppress the introduction of these statements on the grounds that they were involuntary. The trial court held that Valdez's statements from both interviews were made involuntarily and ordered them suppressed. This appeal followed.

II.

When a defendant challenges the voluntariness of a statement, the prosecution must establish by a preponderance of the evidence that the defendant made the statement voluntarily. *See Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. Trujillo*, 938 P.2d 117, 126 (Colo.1997); *People v. Gennings*, 808 P.2d

839, 843 (Colo.1991). Critical to any finding of involuntariness is the existence of coercive governmental conduct, either physical or mental, that plays a significant role in inducing a confession or an inculpatory statement. *See Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Gennings,* 808 P.2d at 845. In essence, the question at issue is whether the individual's will has been overborne. *See Townsend v. Sain,* 372 U.S. 293, 307, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *People v. Mendoza–Rodriguez,* 790 P.2d 810, 816 (Colo.1990). A defendant's mental condition, by itself and apart from its relationship to official coercion, does not resolve the issue of constitutional voluntariness. *See Connelly,* 479 U.S. at 164, 107 S.Ct. 515; *Gennings,* 808 P.2d at 844. However, the deliberate exploitation of a person's weaknesses by psychological intimidation can, under certain circumstances, constitute coercion rendering a statement involuntary. *See Gennings,* 808 P.2d at 844.

■ In determining whether a defendant's statements are voluntary, a trial court must consider the totality of the circumstances surrounding the statements. *See Trujillo,* 938 P.2d at 126. This court has articulated several factors to consider when evaluating the voluntariness of a statement in light of the totality of the circumstances, including:

> whether the defendant was in custody or was free to leave and was aware of his situation; whether Miranda warnings were given prior to any interrogation and whether the defendant understood and waived his Miranda rights; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Gennings,* 808 P.2d at 844.

■ In ruling on a motion to suppress a custodial statement, a trial court must engage in both fact-finding, which involves a specific inquiry into the factual circumstances of the case, and law application, which involves the application of the controlling legal standard to the facts established by the evidence. *See People v. Quezada,* 731 P.2d 730, 732 (Colo.1987). A trial court's findings of fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record. *See id.; People v. Raffaelli,* 647 P.2d 230, 236 (Colo.1982). However, an ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings is subject to correction by a reviewing court. *See Quezada,* 731 P.2d at 732–33. When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law which is subject to *de novo* review. *See People v. D.F.,* 933 P.2d 9, 14 (Colo.1997); *Lakeview Assocs. v. Maes,* 907 P.2d 580, 583–84 (Colo.1995).

The trial court made the following oral findings of fact on the record in support of its holding that Valdez's statements were involuntary:

> [T]he defendant was in custody and was not free to leave.... He was adequately and fully advised of his right to remain silent, his right to have a lawyer, and his right to exercise any of these rights at any time, and he waived those rights.... *The Court does not find that there was any physical force by the police officer, and there [was no] direct coercion; nor is there any deception....* The length was not unnecessarily long, an hour and twenty minutes. The place of the interrogation was not shown to be anything that was coercive against the defendant.

(Emphasis added.)

The trial court also found the following: (1) Sutterfield was shown to have been angry and confrontational with Valdez; (2) Sutterfield argued with and condemned Valdez; (3) Valdez was confused when talking with Sutterfield because of the type of interrogation; (4) Valdez was hungry and tired at the time of the interrogation; and (5) Valdez's request

for rest was denied.[1] In conclusion, the court held as follows:

> [T]he Court finds that [Valdez's] statements were involuntary, not only as to those shown on the tape but all those that were made by the defendant during the interrogation of Officer Sutterfield and Officer Crowe, because if he was confused and affected by the interrogation of Officer Crowe, he certainly must have been confused by the confrontational interrogation by Officer Sutterfield.

In the instant case, the prosecution argues that the trial court's order is premised upon both an incorrect conclusion of law and erroneous findings of fact. We conclude, however, that the trial court's findings of fact are supported by competent evidence in the record.[2] The court's findings are sufficient and adequately supported by the record, so as to make remand for further findings unnecessary. *See People v. Hutton,* 831 P.2d 486, 489 (Colo.1992). Accordingly, we review the trial court's ultimate conclusion of constitutional law *de novo.*

■ ■ Although the trial court found that the officers' conduct did not involve "direct coercion" or "deception," it nevertheless concluded that Valdez's statements were involuntary. A necessary prerequisite to a conclusion of involuntariness is a finding that the police conduct in question was coercive. *See Connelly,* 479 U.S. at 167, 107 S.Ct. 515. Furthermore, if coercive conduct is found, the court must further conclude that such conduct played a *significant role* in inducing the statements. *See People v. Dracon,* 884 P.2d 712, 719 (Colo.1994). Finally, a trial court must find that the defendant's will was overborne by improper state conduct. *See id.* Although the court below applied the factors we articulated in *Gennings,* it did not find that the conduct of Officers Sutterfield and Crowe was coercive or that Valdez's will was overborne. Absent these essential findings, the trial court's legal conclusion cannot be affirmed.

■ ■ The only finding the trial court made regarding the police conduct at issue in this case was that Sutterfield was angry, confrontational, and condemning when he interviewed Valdez. The trial court did not, however, conclude that Sutterfield's conduct rose to the level of coercion. Furthermore, the court did not conclude that Sutterfield's conduct played a significant role in inducing Valdez's statements. An officer's angry and confrontational demeanor does not render a defendant's statements involuntary in the absence of a causal connection between the two. *See, e.g., Dracon,* 884 P.2d at 719.

As the trial court held, the tenor of Sutterfield's portion of the interrogation was indeed confrontational. Sutterfield called Valdez "deceitful" and cut off the interview when he became frustrated with Valdez's evasive answers. However, it is apparent that Sutterfield's demeanor did not intimidate Valdez. In fact, the transcript reveals that Valdez argued with Sutterfield, stating that he was not going to "sit here and be condemned and hanged for something" he did not do. Throughout the interview, Valdez insisted that he did not sexually assault the two girls. The foregoing facts support the trial court's finding that the interrogation involved no "direct coercion" or "deception." There is no indication in the record that Valdez's free will was overborne during either interrogation. *See Dracon,* 884 P.2d at 719.

■ ■ Moreover, the trial court erroneously based its holding on the fact that Valdez was "confused by" the interrogation. However, the fact that Valdez was confused as a result of the type of interrogation is not sufficient evidence to support a conclusion that his statements were involuntary. A finding that police took advantage of a defendant's confused mental state can lead to a conclusion that the defendant's statements were made involuntarily. *See, e.g., People v. McIntyre,* 789 P.2d 1108, 1111 (Colo.1990). However, as a matter of law, Valdez's confusion in this case does not rise to the level

---

**1.** The court also noted that the parties did not present evidence at the hearing regarding Valdez's educational background, his employment, or his past experience with law enforcement or with the judicial system.

**2.** The nature of the prosecution's challenge to the trial court's findings of fact is irrelevant, as we decide this case exclusively on legal grounds.

required for such a conclusion. The trial court found that Valdez understood both the meaning and extent of his rights. The trial court further found that Valdez waived his right to a lawyer in a clear and unequivocal manner. The trial court did not find any nexus between the police conduct and the defendant's confusion. As Valdez's confusion had no impact on the voluntariness of his statements, it was an inappropriate basis for the trial court's holding.

Likewise, the trial court's finding that Valdez was hungry and tired does not support a conclusion of involuntariness in this case. While the use of physical punishment such as the deprivation of food and sleep can be a supporting factor for a conclusion of involuntariness, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the circumstances of this interview do not support such a conclusion. Valdez arrived at the police station shortly before the interrogation began at 8:20 p.m. The interrogation lasted only an hour and twenty minutes, ending at approximately 9:40 p.m. If Valdez was hungry and tired during this period of time, it was through no fault of the police. There is no evidence that Valdez asked the officers for something to eat. In fact, Crowe attempted to make Valdez comfortable by bringing him a glass of water, even though Valdez had not requested it. Absent evidence that the officers deprived Valdez of food and rest as a means of physical punishment, the fact that Valdez happened to be hungry and tired does not support a conclusion that his statements were involuntary.

Furthermore, the trial court's finding that Valdez requested, but was denied rest, does not support a conclusion that all of his statements were involuntary. In fact, it is clear from the record that the prosecution does not seek to introduce any statements Valdez made *after* Crowe denied Valdez's request for a break. Therefore, Crowe's denial of Valdez's request is not relevant to the analysis in this case.

The trial court's findings in this case do not support a holding that the defendant's statements were the product of any force, threats, promises, or other forms of undue influence exerted by Officers Sutterfield and Crowe.

### III.

We hold that the defendant's statements were voluntary under the totality of the circumstances because they were not made as the result of coercive police conduct. Accordingly, we reverse the district court's suppression order and remand for further proceedings consistent with this opinion.