The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Scott Michael OWENS, Defendant–Appellee.

No. 98SA225.

Supreme Court of Colorado, En Banc.

Jan. 11, 1999.

James J. Peters, District Attorney, Eighteenth Judicial District, John Topolnicki, Chief Deputy District Attorney, Michael Spear, Deputy District Attorney, Englewood, Colorado Attorneys for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Wayne L. Cole, Deputy State Public Defender, Castle Rock, Colorado Attorneys for Defendant–Appellee.

Justice BENDER delivered the Opinion of the Court.

In this interlocutory appeal the People challenge an order suppressing the oral and written statements of the defendant, Scott Michael Owens. The basis for suppression was that although the police advised Owens of his *Miranda* rights and Owens executed a written waiver of those rights, the witness statement form that the police used contained erroneous information about Owens's Fifth Amendment privilege against self-incrimination at trial. The trial court ruled that giving this misinformation to Owens was inconsistent with his *Miranda* advisement and invalidated his earlier waiver. Reviewing the undisputed facts in the record de novo, we conclude that under the totality of the circumstances, the People established that Owens's initial *Miranda* waiver was valid. We hold that the erroneous information contained in the witness statement form did not invalidate this waiver because it did not pertain to Owens's rights during custodial interrogation. Accordingly, we reverse the trial court's order of suppression and return this case for further proceedings.

## I.

In the course of conducting an investigation, officers of the Parker Police Department encountered the defendant at his mother's residence. While there, Owens pulled one of the officers aside to discuss an unrelated matter because he was worried about his girlfriend's alleged drug use. At this time, the officer noticed track marks on Owens's arms and saw evidence of drug paraphernalia. He arrested Owens for the possession of methamphetamine, a schedule II controlled substance. A subsequent search of the house revealed further evidence of drug use.

At the station house, Officer Saraff advised Owens of his *Miranda* rights and gave him a written *Miranda* waiver form to execute. Owens placed his initials next to each of the *Miranda* warnings printed on the form, signifying that they had been given to him. Also on this form, Owens signed an acknowledgement that he understood his rights and signed an express waiver of his right to a lawyer and agreed to answer police questions. Owens then made incriminating oral statements. Sergeant Gerlach then joined them and gave Owens a "Witness Statement Form" to sign. This police form contains the pre-printed statement that Owens may be required to testify in court about his statement:

> This statement is given of my own free will without threat or coercion or without promises of any kind. *I also understand that I may be called upon to testify in court as to this case and statement.*

(Emphasis added.) Owens initialed and dated this form, indicating that he understood it. Thereafter, Officer Saraff prepared a written narrative from Owens's statements on the witness statement form. Owens did not sign this form.

It appears from the record that after Owens provided incriminating statements, Sergeant Gerlach inappropriately threatened to use a catheter if Owens did not provide a urine sample voluntarily. When Owens was still unable or unwilling to provide a sample, Sergeant Gerlach transported Owens to the hospital. However, the doctor refused to perform the procedure without Owens's consent.

Owens was charged with four related felony and petty offense drug charges. In pretrial motions, he moved to suppress his oral and written statements on several grounds, including that these statements were obtained in the absence of a voluntary, knowing, and intelligent waiver of his *Miranda* rights.

At the suppression hearing, Sergeant Gerlach testified that following the *Miranda* advisement, Owens was talkative; he initiated conversations with police and frequently repeated himself. Sergeant Gerlach related that police "had a hard time keeping [Owens] quiet."

At the conclusion of the hearing, the trial court suppressed Owens's oral and written statements, reasoning that the advice to Owens contained on the witness form directly conflicted with Owens's rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966):[1]

> The Court finds that that statement was directly contradictory to the defendant's Fifth Amendment privilege as it was explained to him in the *Miranda* advisement, and based on that conflict and improper information conveyed to the defendant in this statement, the Court believes violates the defendant's *Miranda* rights, and therefore, the court suppresses the contents of the statement, as well as any oral statements made by the defendant to the officers at that time he provided the written statement.

The prosecution brings this interlocutory appeal of the trial court's ruling.

## II.

An accused's statement made while being interrogated in a custodial setting is inadmissible unless it is provided pursuant to a valid *Miranda* waiver. *See Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. The prosecution has the burden of proving by a preponderance of the evidence that the accused gave the *Miranda* waiver voluntarily, knowingly, and intelligently. *See People v. Valdez*, 969 P.2d 208, 211 (Colo.1998); *People v. Hopkins*, 774 P.2d 849, 852 (Colo.1989). To determine whether the prosecution has met its burden, the trial court must evaluate the waiver based on the totality of the circumstances surrounding the custodial interrogation. *See Hopkins*, 774 P.2d at 852. "Only if the 'total-

---

1. Following the Supreme Court's decision in *Miranda*, a police officer must warn a suspect: prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda*, 384 U.S. at 479, 86 S.Ct. 1602.

ity of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (quoting *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)). Factors to consider include, but are not limited to:

> the time interval between advisement and interrogation[;] . . . whether the defendant or the interrogating officer initiated the interview; whether and to what extent the interrogating officer reminded the defendant of his rights prior to the interrogation by asking him if he recalled his rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgment and waiver, if any; and the background and experience of the defendant in connection with the criminal justice system.

*Hopkins,* 774 P.2d at 852. If, after considering the totality of the circumstances surrounding the interrogation, the trial court finds that the prosecution has not met its burden of proving that the defendant waived his *Miranda* rights voluntarily, knowingly, and intelligently, then the statements must be suppressed. *See Miranda,* 384 U.S. at 444, 86 S.Ct. 1602.

■ When ruling on a motion to suppress a defendant's statement, the trial court must make findings of historical fact and then apply legal standards to these facts. *See Valdez,* 969 P.2d at 211. The trial court's findings of historical fact are entitled to deference by appellate courts and will only be overturned if they are not supported by competent evidence:

> In reaching a decision on a motion to suppress a custodial statement, a court must engage both in factfinding – a specific inquiry into the historical phenomena of the case – and law application, which involves the application of the controlling legal standard to the facts established by the evidence. A court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record.

*People v. Quezada,* 731 P.2d 730, 732 (Colo. 1987) (citations omitted). We have the responsibility to ascertain whether the trial court's legal conclusion is supported by sufficient evidence and whether the trial court applied the correct legal standard:

> An ultimate conclusion of constitutional law that is inconsistent with or unsupported by evidentiary findings . . . is subject to correction by a reviewing court, as is a court's application of an erroneous legal standard to the facts of the case.

*Id.* at 732–33.

If the record is insufficient, then the case must be remanded to the trial court for further findings of historical fact. *See People v. Sutherland,* 886 P.2d 681, 688 (Colo. 1994). On the other hand, when there are no facts in dispute, the issue becomes subject to de novo appellate review since the legal effect of undisputed controlling facts is a question of law. *See Valdez,* 969 P.2d at 211; *Lakeview Assocs., Ltd. v. Maes,* 907 P.2d 580, 583–84 (Colo.1995).

### III.

■ We now apply these principles of law to this case. The trial court ruled that the advice contained on the witness statement form, that Owens "may be called upon to testify in court as to this case and statement," contradicted Owens's privilege against self-incrimination and therefore invalidated his otherwise valid *Miranda* waiver. We disagree with this conclusion.

Nothing in the witness statement form contradicts the protections that *Miranda* provides to an accused: (1) the right to remain silent; (2) the right to the services of a lawyer during questioning who can be appointed if necessary; or (3) the warning that anything the accused says might be used against him at trial. The advice solely concerned Owens's right to assert his privilege against self-incrimination at trial. While incorrect, it did not misstate his rights while undergoing custodial interrogation. Hence,

we conclude that while the advice contradicts Owens's privilege against self-incrimination at trial, this error, standing alone, does not invalidate Owens's waiver of his *Miranda* rights.

The trial court made limited findings of historical fact. It found that Owens was taken into custody, was advised of his *Miranda* rights verbally and in writing, and then provided a written statement to the police. These findings do not fully answer the question of whether Owens executed a valid waiver based on the totality of the circumstances surrounding his custodial interrogation. However, our review of the record reveals no disputed factual issues concerning the *Miranda* advisement given to Owens, his written waiver of his *Miranda* rights, or the other circumstances surrounding the custodial interrogation. Hence, we review the legal effect of these undisputed facts de novo and find it unnecessary to remand this case for further evidentiary findings regarding the validity of Owens's *Miranda* waiver.

The undisputed facts established at the hearing are as follows. The police read Owens his complete *Miranda* rights. Owens received a written *Miranda* waiver form describing each right individually. Owens placed his initials after each statement of these rights, indicating that he had read and understood each right. He signed this form, indicating that he understood all of the rights required by *Miranda*. He signed a second time stating that he agreed to answer questions and that he desired to waive his right to a lawyer at that time. Immediately following his advisement, police began to interview Owens. Owens wanted to talk to the police and he expressly waived his *Miranda* rights. He also provided a second, more detailed incriminating statement that was reduced to writing which he did not sign.

We are unpersuaded by Owens's argument that the discussion between Sergeant Gerlach and Owens concerning a forced urine sample taints the voluntariness of Owens's waiver. A close reading of the record indicates that the advisement and incriminating statements occurred before this discussion. Thus, we conclude that the totality of the

circumstances surrounding Owens's custodial interrogation established that he voluntarily, knowingly, and intelligently waived his *Miranda* rights.

## IV.

To summarize, we hold that the trial court erred in suppressing Owens's oral and written statements. We determine that Owens gave these statements following a valid *Miranda* waiver, and the advice on the witness statement form, although an inaccurate statement of Owens's privilege against self-incrimination at trial, did not invalidate that waiver. Accordingly, we vacate the trial court's suppression ruling and remand this case to the trial court for further proceedings consistent with this opinion.