The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Kevin L. **BLANKENSHIP**, Defendant–Appellant.

No. 97CA2225.

Colorado Court of Appeals, Division IV.

Oct. 26, 2000.

Certiorari Denied Sept. 10, 2001.

Ken Salazar, Attorney General, Laurie A. Booras, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Richard A. Hostetler, Marks and Hostetler, Denver, CO, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Kevin L. Blankenship, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree murder, second degree kidnapping, aggravated robbery, robbery of an at-risk adult, two counts of second degree burglary, two counts of conspiracy, criminal trespass, and theft. He also appeals the sentences imposed. We vacate two convictions, affirm the balance of the judgments of conviction, vacate one of the sentences imposed, modify another of the sentences to run concurrently, and remand for resentencing and correction of the mittimus.

In the parking lot of a store, the sixteen-year-old defendant and his accomplice kidnapped an elderly woman and forced her into the trunk of her car. They then drove to an isolated rural area where they left the victim after tying her to a concrete structure and piling heavy objects on top of her. She subsequently died from hypothermia.

Over the next three days, defendant and his accomplice ransacked the victim's house and stole jewelry, money, and other valuables. They also broke into the garage of another house in the area and stole guns.

Following his arrest, defendant gave the police a description of the place where he and his accomplice had left the murder victim. Based on that description, the police found the victim's body and charged defendant and his accomplice with first degree murder and other offenses in connection with her death. In addition, the two were charged with burglary and related offenses stemming from the theft of the guns from the second victim's house.

Defendant and the accomplice were tried separately. The jury found defendant guilty on all of the charged offenses. For the offenses involving the deceased victim, the court sentenced defendant to life imprisonment without the possibility of parole on the murder counts along with concurrent sentences for the remaining counts, and a consecutive sentence for robbery of an at-risk adult. On the convictions stemming from the burglary of the second victim, the court imposed sentences to run concurrently with the life sentence on all the counts except the second degree burglary count. On that count, the court imposed a twenty-four-year sentence to be served consecutively to the other sentences.

I.

Defendant first contends the trial court erred in failing to suppress the statements he made to the police. We disagree.

Following his arrest, the police initially questioned defendant regarding his age and where he lived. When they learned that he was sixteen years old and had most recently lived with his stepmother in Illinois, they questioned him further regarding whether he was a runaway. After determining that defendant was a runaway, the police gave him warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

(1966). Defendant then signed a form waiving his constitutional rights.

During subsequent questioning, defendant made incriminating statements regarding his involvement in the crimes and eventually described the location where he and his accomplice had left the murder victim.

## A.

Defendant initially contends the statement he made to police following the *Miranda* warnings was involuntary and the trial court's failure to make findings regarding the voluntariness of his statement necessitates a reversal of his convictions. We disagree.

■ Confessions, admissions, and statements are not admissible for any purpose unless they are made voluntarily. Whether a statement is voluntary is a determination to be derived from reviewing the totality of the circumstances, which must demonstrate that the accused's statement is the product of his or her free and unconstrained choice. *People v. Mounts*, 784 P.2d 792 (Colo.1990).

■ Statements must not be the result of official coercion, intimidation, or deception. *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *People v. May*, 859 P.2d 879 (Colo.1993). Official coercion includes any sort of threats, or any direct or implied promises or improper influences, however slight. *People v. Mendoza–Rodriguez*, 790 P.2d 810 (Colo.1990).

■ The term "totality of the circumstances" refers to the significant details surrounding and inhering in the interrogation under consideration. They include the following: whether the defendant was in custody or was free to leave and was aware of his or her situation; whether *Miranda* warnings were given before any interrogation and whether the defendant understood and waived his or her *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else before the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately before and during the interrogation, as well as his or her educational background, employment status, and prior experience with law enforcement and the criminal justice system. *People v. Gennings*, 808 P.2d 839 (Colo.1991).

■ Essentially, in order to find that a statement was involuntary, a court must find that the conduct of officers was coercive and that a defendant's will was overborne. *People v. Valdez*, 969 P.2d 208 (Colo.1998).

■ Once the trial court has made factual findings concerning the totality of the circumstances, it must then determine as a matter of law whether a defendant's confession was voluntary. While a trial court's findings of historical fact are entitled to deference and will not be overturned if adequately supported by competent evidence in the record, it is critical that the trial court, in making its findings, expressly resolve on the record any contested factual issues. *People v. Gennings supra.*

Here, the trial court concluded that defendant's statements were voluntary, but it made few express factual findings relative to that issue. Nevertheless, the historical facts surrounding the making of the statement are largely undisputed. And, as to those issues that were disputed, the court did make factual findings.

Thus, the issue presented is whether the undisputed facts and those factual findings the court did make support the court's ultimate conclusion. *See People v. Gonzales*, 987 P.2d 239 (Colo.1999) (while appellate court defers to a trial court's findings of disputed fact, the application of a legal standard to historical fact is a matter for *de novo* appellate review).

■ The court found, on supporting evidence, that defendant was a runaway from Illinois on a "joy ride" to Colorado; that he was a "streetwise kid," who had a relatively significant history of being involved with the law; that he was of average intelligence and was not mentally retarded; and that he gave

sophisticated responses to the detective's questions. It also found that defendant understood the rights he was giving up when he gave the statement.

The defendant's videotaped statement also establishes that, at the time he made the statements, he was in custody and was aware of his situation, *Miranda* warnings had been given to him, and he had waived his *Miranda* rights. However, he did not have the opportunity to confer with counsel or anyone else before giving the statement. Nevertheless, while the statement was made in the course of interrogation, defendant indicated several times that he wanted to speak with the police.

Further, there is no evidence that there were any concessions or incentives offered to induce defendant to speak with the police. In addition, defendant does not assert that the method and style employed in questioning him was hostile. Our review of the videotaped statement reveals that the questioning proceeded in a calm and non-threatening manner. Also, defendant did not pause or hesitate during his conversation with the police and the tone of the questioning was conversational, not confrontational.

It appears defendant had no physical limitations or impairment before and during the interrogation, which occurred in the police station where two detectives were present.

Defendant was sixteen years old at the time he gave the statement. Concerning his educational level, the court rejected testimony by defendant's expert that defendant had a very low-level reading ability. The prosecution's expert witness testified, after reviewing school records, police reports, and the tests administered by the defense psychologist, that defendant understood what he was doing when he waived his *Miranda* rights and agreed to be interviewed.

There was no evidence disclosing defendant's employment status.

■ Defendant asserts that we should pay special attention to the fact that he was a minor, that Colo.Sess.Laws 1989, ch. 169, § 19–2–210, requires the presence of a parental figure during questioning under most circumstances, and that he had not conferred with anyone before speaking with the police. Citing *Nicholas v. People*, 973 P.2d 1213 (Colo.1999), he further notes that juveniles are generally considered to lack the capacity to make legal decisions alone.

We agree that these are appropriate factors to consider. However, such factors are not alone determinative. Moreover, as we conclude below, because defendant was a runaway, the protections afforded by § 19–2–210 did not apply to him.

Based upon all of the above, we conclude that defendant's statement was voluntary. Accordingly, we reject defendant's contention.

**B.**

Defendant next argues that the trial court erred in finding that no *Miranda* warnings were necessary before the initial questioning regarding his age and status as a runaway. We disagree.

■ A defendant who is in custody must be advised of his or her constitutional rights before being subjected to interrogation. *Miranda v. Arizona, supra.* "Interrogation" refers to words or actions that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *People v. Trujillo*, 784 P.2d 788 (Colo.1990).

■ However, the purpose of the *Miranda* rule is to protect a suspect against investigative interrogation and not from the routine gathering of basic identifying data needed for booking and arraignment. Thus, interrogation does not include questions normally attendant to arrest and custody. *Rhode Island v. Innis, supra.*

■ Here, defendant was in custody when he was initially questioned, but that questioning was limited to his age, address, and whether he was a runaway. And, after ascertaining that defendant was a runaway, the police gave defendant the appropriate *Miranda* warnings.

We conclude that these preliminary questions were not reasonably likely to elicit an

incriminating response. Accordingly, they did not constitute "interrogation."

Further, the questions were merely incident to defendant's arrest and custody because the police were obligated to determine his status; that is, whether he was a juvenile and whether they needed to contact his parents or guardians prior to questioning. *See People v. Anderson,* 837 P.2d 293 (Colo.App. 1992)(even though having an out-of-state address tended to prove an element of the crime for which defendant was charged, questions regarding defendant's address were incident to arrest and not intended to elicit an incriminating response). Therefore, this preliminary questioning did not require *Miranda* warnings before it could proceed.

■ To the extent defendant contends that these preliminary questions were designed to elicit incriminating information because they tied him to the accomplice, we reject that argument. We fail to see how such information, alone, could have raised any greater suspicion or incrimination than already existed concerning his involvement in the crimes. Moreover, other witnesses corroborated any information obtained during this initial questioning relative to his relationship with the accomplice, and thus, his statements in this regard were merely cumulative.

## C.

Defendant also contends that the trial court erred by finding that his waiver of *Miranda* rights was knowing, intelligent, and voluntary. We disagree.

■ An accused's statement made during the course of custodial interrogation is inadmissible unless it is provided pursuant to a valid waiver of his or her constitutional rights. *Miranda v. Arizona, supra; People v. Owens,* 969 P.2d 704 (Colo.1999).

■ When an objection is raised to the introduction of an incriminating statement on the basis that law enforcement officials obtained the statement in violation of *Miranda,* the prosecution has the burden to prove by a preponderance of the evidence that the statement was made after a knowing, voluntary,

and intelligent waiver. *People v. Mejia–Mendoza,* 965 P.2d 777 (Colo.1998).

■ To determine whether a knowing, voluntary, and intelligent waiver has occurred, courts must examine the totality of the circumstances surrounding the custodial interrogation. Only if the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that constitutional rights under *Miranda* have been validly waived. *People v. Owens, supra.*

■ Among the factors to be considered in a review of the totality of the circumstances surrounding a waiver are the following: the time between advisement and interrogation; whether the defendant or the interrogating officer initiated the interview; whether and to what extent the interrogating officer reminded the defendant of his or her rights prior to the interrogation by asking if he or she recalled those rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgement and waiver, if any; and the background and experience of the defendant in connection with the criminal justice system. *People v. Hopkins,* 774 P.2d 849 (Colo.1989).

■ When ruling on a motion to suppress a defendant's statement, the trial court must make findings of historical fact and then apply legal standards to those facts. *People v. Valdez, supra.* While the trial court's findings of fact are entitled to deference and will be overturned only if they are not supported by competent evidence, the trial court's ultimate legal conclusion as to the validity of a waiver is subject to *de novo* review on appeal. *People v. Owens, supra.*

■ Here, prior to questioning defendant about his involvement in the disappearance of the murdered victim, the investigating officer informed defendant of his constitutional rights under *Miranda.* Thereafter, the officer read the waiver form to defendant and asked him if he understood the rights he was waiving. Defendant indicated that he understood the waiver and signed the waiver acknowledgement. The interrogation immediately followed the advisement.

After viewing the videotape of defendant's statements to police, the trial court found that defendant was a street-wise kid who was not hesitant to talk to the police. Further, the court found that, even at his young age, defendant had already had numerous police contacts. In addition, based on the videotape of defendant's statement and the testimony of defendant's long-time friend, the court found that defendant was of average intelligence and capable of understanding his rights. Consequently, the court concluded that defendant's waiver was knowingly and intelligently made. And, as noted above, the court further stated that it found defendant's statement was voluntary.

There is record support for the trial court's findings and conclusions. And, although defendant presented expert testimony that he was mentally retarded, and thus incapable of making a knowing and intelligent waiver, the trial court was not obligated to believe it. *See People In Interest of M.S.H.*, 656 P.2d 1294 (Colo.1983) (when the record presents conflicting evidence on some matters, it is the trial court's province to judge the credibility of the witnesses, the sufficiency, probative effect and weight of the evidence, and the inferences and conclusions to be drawn from the evidence).

We conclude that defendant's waiver was knowing, voluntary, and intelligent. Consequently, we decline to disturb the court's finding of a waiver.

### D.

Defendant contends that, because he was sixteen at the time he gave his incriminating statements and neither his parent, custodian, nor guardian was present during the questioning, the trial court erred in refusing to suppress his statements. Specifically, he asserts that because his mother and stepmother, both of whom resided in Illinois, knew he was in Colorado, the trial court erred in finding that he was a runaway from a state other than Colorado. Alternatively, he argues that even if he was a runaway, the court nevertheless erred in admitting his statements because he was not of "sufficient age and understanding" as required by Colo. Sess.Laws 1989, ch. 169 § 19–2–210, and the

court erred in failing to make findings on that issue. We reject these contentions.

■ In general, a statement given by a juvenile during custodial interrogation is not admissible unless a parent, guardian, or legal custodian is also present at the time of the interrogation. Section 19–2–210; *Nicholas v. People, supra; People in Interest of M.R.J.*, 633 P.2d 474 (Colo.1981).

However, if a juvenile is a runaway from a state other than Colorado and is of "sufficient age and understanding," statements made without such an adult being present are admissible. Colo.Sess.Laws 1989, ch. 169, § 19–2–210.

i.

The term "runaway," as used in Colo.Sess. Laws 1989, ch. 169, § 19–2–210, is not specifically defined in the statute. However, it is substantially equivalent to the phrase "runaway child," as used in *People v. Salazar*, 920 P.2d 893, 897 (Colo.App.1996). There, a division of this court approved a definition of runaway child as "an unmarried person who is under the age of eighteen and who has run away from home or is otherwise beyond parental control." We approve that definition and determine that it should apply here.

■ Whether a person is a runaway presents a question of fact. *See People v. Salazar, supra.*

The credibility of witnesses, probative effect, weight of evidence, and inferences and conclusions to be drawn therefrom are all within the province of the trial court as trier of fact. *See People v. Turtura*, 921 P.2d 40 (Colo.1996). And, the trial court's findings of historical fact are entitled to deference by a reviewing court and will not be reversed upon appeal when they are supported by competent evidence in the record. *People v. Mejia–Mendoza, supra.*

■ Here, the trial court found that at the time defendant committed these crimes he was a runaway from Illinois. Evidentiary support for this finding includes the following.

Defendant's father was deceased. His mother resided in Illinois and had legal custody of defendant at the time he traveled to Colorado. However, defendant resided primarily with his stepmother. Defendant did not notify either person that he was leaving the state and did not take his clothes with him. And, although defendant's mother testified that she had given defendant permission to go to California to visit his grandmother, that permission was given approximately six months before he actually left the state. In addition, defendant and his friend traveled from Illinois to Colorado in stolen cars, and defendant's mother did not know he was in Colorado until the juvenile detention facility notified her that they had him in custody for the crimes at issue here.

Accordingly, we will not disturb the trial court's finding that defendant was a runaway.

### ii.

Defendant contends the court erred in admitting his statements because he was not of "sufficient age and understanding" as required by the statute, and that the trial court's failure to make findings concerning this issue requires reversal of his convictions. We perceive no error.

The statute codified the warnings incorporated in a *Miranda* advisement in the juvenile context, with the additional requirement that a juvenile's parent, guardian, or legal or physical custodian must be present during the advisement and interrogation. *People v. T.C.*, 898 P.2d 20 (Colo.1995).

■ The statute was enacted to safeguard the privilege against self-incrimination, the same privilege protected by *Miranda*. *People v. Saiz*, 620 P.2d 15 (Colo.1980). It is designed to provide the child parental guidance during police interrogations, and thereby provide at least some assurance that the child's waiver of rights will be made knowingly and intelligently. *People v. Hayhurst*, 194 Colo. 292, 571 P.2d 721 (1977).

■ Based upon the purposes of the statute, and notwithstanding defendant's contention to the contrary, we conclude that the phrase "sufficient age and understanding" refers just to the juvenile's ability to understand his or her constitutional rights and to make a knowing, intelligent, and voluntary waiver thereof. We reject defendant's contention that the phrase means "something more or different" than what is required for a knowing, voluntary, and intelligent waiver. Defendant offers no workable definition or alternative meaning for the phrase. Further, the standard for finding a knowing, voluntary, and intelligent waiver of *Miranda* rights is already a high and demanding one, and defendant offers no compelling reason to interpret the phrase to require even more.

This interpretation does not, contrary to defendant's contention, render the statute redundant. The statute may fairly be read as reflecting the General Assembly's desire to stress that, in dealing with a runaway from another state, a juvenile's constitutional rights must still be protected.

■ Here, because the trial court found that defendant's waiver was knowingly and intelligently made, we perceive no reversible error in the court's failure specifically to indicate that defendant was of sufficient age and understanding.

In view of these determinations, we need not address defendant's contention that the trial court erred in failing to suppress derivative evidence obtained as a result of his statements or his claim that any such error was not harmless.

We also acknowledge that another division of this court concluded, in *People v. Farrell*, 10 P.3d 672 (Colo.App.2000), *cert. granted* Oct. 9, 2000, that defendant's confession here was not admissible against his codefendant because it was not trustworthy as a statement against penal interest, citing *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). However, the "trustworthiness" inquiry conducted there is distinct from the inquiry we have conducted here concerning suppression of the statement.

Accordingly, we do not perceive that the division's decision in *People v. Farrell* requires a different result.

## II.

Defendant next contends that the destruction of prospective juror questionnaires in violation of § 13–71–115(2), C.R.S. 2000, prejudiced his right to appeal and that, therefore, we should reverse his conviction. We disagree.

Section 13–71–115(2) requires trial courts to maintain the original questionnaire for each prospective juror.

Here, the defense challenged one of the potential jurors for cause based in part on her responses on the juror questionnaire. When the trial court denied the motion, defendant exercised a peremptory challenge to remove the juror. Following jury selection, the original questionnaires from the excused jurors were destroyed.

Although the questionnaires were erroneously destroyed, after reviewing the transcript of the voir dire proceedings, we nevertheless conclude that defendant has failed to establish any prejudice. The record documents what the potential juror had stated in her questionnaire concerning her view of the defendant's guilt prior to trial, and the court and counsel were able to question her, on the record, regarding that view. Thus, the error was harmless.

## III.

Defendant also contends that the trial court abused its discretion in denying his challenge for cause to the same prospective juror. We disagree.

In reviewing a trial court's ruling on a challenge for cause to a prospective juror, we must determine whether the trial court abused its discretion. This standard gives deference to the trial court's assessment of the credibility of a prospective juror's responses. It recognizes the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses, and it serves to discourage an appellate court from second-guessing those judgments based on a cold record. *Carrillo v. People*, 974 P.2d 478 (Colo.1999).

It is within the trial court's prerogative to give considerable weight to a potential juror's statement that he or she can fairly and impartially serve on the case. If the trial court is satisfied that a potential juror will render a fair and impartial verdict according to the law and to the evidence submitted at trial, that person should not be disqualified. *People v. Sandoval*, 733 P.2d 319 (Colo.1987).

Here, the juror indicated on the juror questionnaire that she had formed an opinion about defendant's guilt based on media information. During voir dire, she initially expressed ambivalence about whether she could set aside her preconceived opinion and reach a decision based only on the evidence presented at trial. However, when specifically asked by the prosecution whether she could listen to the evidence presented and apply it to the elements of the case in a fair and impartial manner, she responded, "I think so." And, when asked whether her verdict would be based on the testimony heard during the course of the trial, she responded affirmatively.

Defense counsel did not ask this juror any questions during voir dire. However, he challenged her for cause based in part upon her response in the questionnaire about having formed an opinion regarding defendant's guilt. The court denied the challenge, finding that this juror's responses during voir dire indicated that she could follow the instructions given by the court and render a verdict based upon the evidence at trial.

In light of the juror's responses during voir dire, we conclude that the trial court was justified in determining that this juror would follow its directions and render a fair and impartial verdict. Hence, we perceive no abuse of discretion in the court's decision to deny defendant's challenge for cause.

## IV.

Defendant next contends that the trial court erred in imposing consecutive sentences for the aggravated robbery conviction and the conviction for robbery of an at-risk adult pertaining to the murder victim because the evidence supporting both convictions was identical. We agree.

■ Unless multiple victims are involved, concurrent sentences are required when two or more convictions are based on the same act or series of acts arising from the same criminal episode, and the evidence supporting the counts is identical. Section 18–1–408(3), C.R.S.2000.

■ Whether the evidence supporting two or more offenses is identical turns on whether the charges result from the same discrete act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different. *People v. Page*, 907 P.2d 624 (Colo.App.1995).

Here, defendant was charged with and convicted of aggravated robbery and robbery of an at-risk adult as to the murder victim. However, only one act occurred, the robbery of the victim. Although the elements of each charge are not identical, the act giving rise to the charges was identical. Therefore, the trial court was required to impose concurrent sentences for these two counts.

### V.

Defendant also contends, the People concede, and we agree that the trial court erred in entering a judgment of conviction and sentence on more than one murder charge.

■ When a defendant has been found guilty of more than one count of first degree murder and there is only one victim, the doctrine of merger requires that a conviction enter for only one murder count. *People v. Glover*, 893 P.2d 1311 (Colo.1995).

■ Here, the mittimus erroneously reflects that defendant was convicted of extreme indifference murder, felony murder, and first degree murder after deliberation. Accordingly, the cause must be remanded with directions to the trial court to enter one conviction for first degree murder after deliberation.

### VI.

Lastly, defendant contends that the trial court erred by imposing a sentence outside the presumptive range for the robbery conviction stemming from stealing guns from the second victim. He argues that the sentence is not sustainable because the court did not make explicit findings regarding the extraordinary aggravating circumstances justifying such a sentence. We agree.

The presumptive range for defendant's burglary conviction concerning the second victim is between four and twelve years. *See* § 18–1–105(1)(a)(V)(A), C.R.S.2000. The statute also grants the trial court discretion to impose a greater sentence if it finds extraordinary aggravating circumstances justifying a longer sentence. *See* § 18–1–105(6), C.R.S.2000. However, the trial court must make specific findings on the record detailing the extraordinary circumstances that justify a variance from the presumptive range. Section 18–1–105(7), C.R.S.2000.

■ Here, the record indicates that the trial court sentenced defendant to twenty-four years in the custody of the Department of Corrections for the second degree burglary charge arising from the burglary of second victim, and that the sentence was to be served consecutively to other sentences. However, the court made no findings justifying the sentence outside the presumptive range. Therefore, that sentence cannot stand and the cause must be remanded to the trial court for resentencing.

The judgment of conviction for extreme indifference murder and felony murder is vacated. The balance of the judgment of conviction is affirmed. The consecutive sentences for robbery and robbery of an at-risk adult are ordered to be served concurrently to each other, but consecutive to the murder conviction. The cause is remanded to the trial court to correct the mittimus to reflect one conviction and one life sentence without possibility of parole on a conviction for first degree murder after deliberation, and to reflect the concurrent sentences for robbery to be served consecutively to the life sentence. The sentence for second degree burglary of the second victim is vacated and the cause is remanded for resentencing on that offense.

MARQUEZ and TAUBMAN, JJ., concur.