The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Nathan HARRISON, Defendant–Appellant.

No. 01CA0147.

Colorado Court of Appeals, Div. III.

May 23, 2002.

Certiorari Denied Dec. 2, 2002.[1]

---

1. Justice COATS does not participate.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Lisa A. Polansky, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, Nathan Harrison, appeals from the judgment of conviction entered on a jury verdict finding him guilty of manslaughter. He also challenges his sentence in the aggravated range. We affirm.

Defendant was charged with murder after he was involved in the beating of a homeless man who died as a result of the injuries he sustained in the attack. Defendant was convicted of the lesser offense of manslaughter.

## I.

On appeal, defendant contends that the trial court committed reversible error in denying his motion to suppress on the basis that his waiver of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was improper. We find no error.

After the incident, defendant was arrested on an unrelated charge in California. Two Denver police detectives interviewed defendant in California.

The videotape of the interrogation reveals that defendant was advised of his *Miranda* rights by a detective who spoke extremely rapidly. The detective asked defendant if he understood each of those rights and defendant answered "yes."

Defendant was then given an advisement waiver form, which he signed. The detective then apparently read to him, from the waiver form, that "knowing my rights and what I'm doing I now wish to voluntarily talk to you." The detective again handed defendant the form to sign, and defendant asked, "Now what is this for?" The detective responded that they needed the form to talk to him, and for him to talk to them, regarding the incident.

The detective next asked defendant if he had been threatened by anyone to make the statement, to which he responded "no." When asked if he was under the influence of drugs, defendant responded "nope." The detective then asked, "Is this statement being made voluntarily by you, Nathan?" to which he again responded "nope." However, defendant did not hesitate, but instead continued to talk with the detectives. Throughout his statement, defendant never declined to talk, nor did he request that the interview cease.

After an evidentiary hearing, and a review of the videotaped statement, the trial court denied defendant's motion to suppress, concluding that defendant had voluntarily, knowingly, and intelligently waived his *Miranda* rights.

 An accused's statement made during the course of a custodial interrogation is inadmissible unless it is given pursuant to a valid waiver of his or her constitutional rights. *People v. Blankenship*, 30 P.3d 698 (Colo.App.2000).

 The prosecution has the burden to prove by a preponderance of the evidence that the waiver was made: (1) voluntarily, in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) knowingly and intelligently. *People v. Kaiser*, 32 P.3d 480 (Colo.2001). "Only if the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that constitutional rights under *Miranda* have been validly waived." *People v. Blankenship, supra*, 30 P.3d at 705.

 The trial court's findings of historical fact are entitled to deference and will be overturned only if they are not supported by

competent evidence, but the court's ultimate legal conclusion as to the validity of a waiver is subject to de novo review. *People v. Blankenship, supra,* 30 P.3d at 705.

## A.

■ Initially, defendant argues that neither the oral nor the written advisement of his rights was clear and unequivocal.

Specifically, with regard to the oral advisement, he asserts that the videotape indicates that it was given very rapidly, without pauses or time to reflect. Thus, defendant claims the oral advisement was not adequate. With regard to the written advisement, defendant asserts that there was no evidence in the record that he knew how to read, and he was not given the opportunity to read the advisement before signing it.

■ A suspect must be warned "in clear and unequivocal terms" of his rights pursuant to *Miranda v. Arizona, supra,* 384 U.S. at 467–68, 86 S.Ct. at 1624, 16 L.Ed.2d at 720. *See, e.g., People v. Mejia–Mendoza,* 965 P.2d 777 (Colo.1998).

The People concede, and our review of the videotape reveals, that the oral advisement was done very quickly. In fact, the trial court noted that the detective "whizzed" through the advisement, and it was "hard" to understand. However, we conclude that the oral advisement was complete and was comprehensible. Defendant was asked if he understood each of the rights, and defendant unequivocally answered "yes."

Furthermore, defendant does not challenge the adequacy of the written advisement form. Rather, he contends that there was no evidence in the record that he could read, and the videotape demonstrated that he did not read it before signing. However, a review of the record reveals no indication that defendant could not read, nor did he indicate that he did not understand what he was signing.

Thus, there is evidentiary support in the record for the trial court's implicit factual finding that the advisement was adequate.

## B.

Defendant next asserts that the waiver of his *Miranda* rights was not voluntary.

■ The factors to be considered in a review of the totality of the circumstances surrounding the voluntariness of a *Miranda* waiver include:

the time between advisement and interrogation; whether the defendant or the interrogating officer initiated the interview; whether and to what extent the interrogating officer reminded the defendant of his or her rights prior to the interrogation by asking if he or she recalled those rights, understood them, or wanted an attorney; the clarity and form of the defendant's acknowledgement and waiver, if any; and the background and experience of the defendant in connection with the criminal justice system.

*People v. Blankenship, supra,* 30 P.3d at 705.

## 1.

■ Defendant first contends that the waiver was involuntary because it was not an uncoerced choice. In support of this contention, he argues that he was suffering from symptoms of heroin withdrawal and that police used coercive tactics to make him confess. Additionally, he points to the fact that he responded "nope" when asked if he was talking to the detectives voluntarily.

Here, the trial court indicated that it was unimpressed with defendant's claim that he was suffering from withdrawal. Defendant had been in custody in California for twelve days, and the detective who interrogated him testified that he did not appear to be suffering from withdrawal. Defendant stated that his mind was "pretty clear."

■ Moreover, contrary to defendant's assertion, any alleged coercion during his confession is not evidence that the initial waiver of his *Miranda* rights was involuntary. *See People v. Jiminez,* 863 P.2d 981 (Colo.1993)(voluntariness of a statement and voluntariness of a waiver are analytically distinct).

Finally, when the waiver is viewed in context, it is evident that defendant apparently

misspoke when responding "nope" to the question whether he was talking to them voluntarily. This is evidenced by his immediate and continued willingness to talk to the detectives. *See People v. Interest of J.L.M.,* 8 P.3d 435 (Colo.1999)(a valid waiver may be inferred from the actions and words of the person interrogated).

### 2.

■ Defendant also contends that the waiver was involuntary because he was lacking the requisite level of comprehension as to the nature of the rights and the consequences of waiving them. His argument is based on the detective's failure to verify his level of education, his knowledge of English, and whether he was suffering from symptoms of withdrawal. Additionally, he argues that his lack of awareness is evidenced by his question, "Now what is this for?" when asked to sign the waiver form.

The circumstances here support a conclusion that defendant adequately comprehended the nature of the rights. Defendant agreed to talk to the detectives when they arrived in California, and he was interrogated directly after the advisement was given. He clearly spoke English, and the record is devoid of any indication that he was mentally impaired. His question regarding the purpose of the waiver form does not indicate that he did not understand the rights to remain silent and to an attorney. And, contrary to defendant's argument, the record does not indicate that defendant could not read; rather it reveals only that he chose not to read the waiver before signing it.

Thus, under the totality of the circumstances, we conclude that defendant's waiver of his *Miranda* rights was made knowingly, voluntarily, and intelligently. Accordingly, we decline to disturb the court's ruling on his claim of improper waiver. *See People v. Blankenship, supra.*

### C.

■ To the extent that defendant argues on appeal that the trial court failed to rule on the voluntariness of the statement itself, as opposed to the waiver of his *Miranda* rights,

we conclude that this issue was raised for the first time in defendant's reply brief. Thus, we do not address it. *See People v. Czemerynski,* 786 P.2d 1100 (Colo.1990); *People v. Burgess,* 946 P.2d 565 (Colo.App.1997).

### II.

■ Defendant next contends that the court abused its discretion in admitting other bad acts evidence, under CRE 404(b), because it was not relevant to establish intent or identity. We find no abuse of the trial court's discretion.

Prior to trial, the prosecution filed a motion seeking to admit evidence of defendant's involvement in a beating of another homeless man. Because the assaults on both victims were similar, the prosecution argued that the evidence was admissible to show defendant's intent. The court granted the motion, concluding that the evidence was admissible under CRE 404(b), pursuant to the analysis in *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

When the evidence was admitted at trial, the court instructed the jury three separate times that it was admitted for the limited purpose of establishing identity and intent. Prior to deliberations, the jury was again instructed that the evidence was for that limited purpose. The jurors were also given the standard jury instruction indicating that neither sympathy nor prejudice should influence its decision.

CRE 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ Evidence of prior acts is admissible under CRE 404(b) if it: (1) relates to a material fact; (2) has a tendency to make the existence of the material fact more or less probable; (3) is relevant independent of the inference that the defendant has a bad character and acted in conformity with that character in committing the crime; and (4) has probative value that is not substantially out-

weighed by the danger of unfair prejudice. *People v. Spoto, supra.*

■■■ "A trial court is vested with substantial discretion when determining whether to admit evidence of other acts, and its ruling will be disturbed only when it is demonstrated that the trial court abused that discretion." *Douglas v. People,* 969 P.2d 1201, 1204–05 (Colo.1998).

Both assaults were perpetrated by a group of homeless youths who severely beat homeless men and then left them to die. Thus, we find the evidence of the subsequent beating was independently relevant to the material issues of identity and intent. Additionally, we cannot find that the evidence of the second assault created unfair prejudice.

We are not convinced by defendant's argument that because he told the police that he had asked his friends to stop the beating before the victim was killed, the evidence of the second assault was not relevant and, thus, was offered solely for the inference that he was acting in conformity with his bad character. To the extent that defendant might have indicated that he acted to stop the beating, such evidence was presented to the jurors, who could decide the weight to be given it.

Thus, we find no abuse of the trial court's discretion in allowing under CRE 404(b) the evidence of defendant's participation in the second assault.

### III.

Defendant also contends that the trial court erred in denying his request for a mistrial on the basis that the jury was improperly exposed to extraneous information. We find no abuse of discretion.

After deliberations had started, the jury sent a note to the court indicating that one of the jurors was approached by defendant's girlfriend and sole alibi witness, prior to her testimony, and she asked him for spare change. Because she claimed that she needed the money so that "her and her boyfriend could catch a bus," the juror discussed the incident during deliberations and questioned the witness's credibility.

The court dismissed the juror and replaced him with the alternate juror. The court subsequently questioned each remaining juror individually in chambers. Each of the remaining jurors, except one, unequivocally indicated that he or she could set aside anything that was said about the incident and deliberate anew solely on the evidence presented in the courtroom.

The trial court found that the incident was very brief and that the jurors expressed, without hesitation, a high level of confidence that they could proceed with the deliberations anew and disregard the extraneous information. The court further found that the uncertainty expressed by one juror was not due to the incident with the witness. Thus, finding that the entire jury panel was untainted, the court denied defendant's request for a mistrial.

■■■■ The standard to determine jury taint based on exposure to extraneous information or influences depends on whether the issue is discovered before or after the court has control over the jury. When a defendant contends that his or her defense was prejudiced by juror exposure after the jury has been excused, the trial court applies an objective test, first articulated in *Wiser v. People,* 732 P.2d 1139 (Colo.1987), to assess the effect of the extraneous information on a typical jury. That test requires "a new trial where there is a reasonable possibility that the verdict was tainted by the introduction of outside information or influences into the jury deliberations." *Wiser v. People, supra,* 732 P.2d at 1143. See, e.g., *People v. Fox,* 862 P.2d 1000 (Colo.App.1993); *People v. Staggs,* 740 P.2d 21 (Colo.App.1987). A trial court's determination of whether a reasonable possibility of taint existed will be overturned only when it constitutes an abuse of discretion. *People v. Sherman,* 45 P.3d 774, 780 (Colo.App. 2001).

■■■ However, when the issue has been presented during trial, and the jury has not been excused, the *Wiser* test is not applicable. In *Harper v. People,* 817 P.2d 77 (Colo. 1991), the supreme court analyzed a situation in which the jurors could have been exposed to a potentially prejudicial newspaper article

during the defendant's trial, and the defense raised this issue while the jurors were still deliberating. The *Harper* court ruled that the reasonable possibility of prejudice test was not suitable for resolving, during the trial, the effect of media reports. Instead, it established a three-step process to assess prejudice.

First, the trial court must determine whether the extraneous information has a potential for unfair prejudice. If it does, the court then must canvass the jurors to find out whether they had learned of the potentially prejudicial information. Finally, it should examine the exposed jurors—outside the presence of the other jurors—to ascertain how much they know of the extraneous information and what effect, if any, it has had on their ability to decide the case fairly. *Harper v. People, supra; See also People v. Ferrero,* 874 P.2d 468, 473 (Colo.App.1993); *People v. Moore,* 701 P.2d 1249 (Colo.App. 1985); *but see People v. Raehal,* 971 P.2d 256 (Colo.App.1998)(finding that the procedures in *Harper v. People* applicable only to extraneous media reports, and not to prejudicial comments made in the courtroom.)

 Here, the note from the jury made it clear that all the jurors were exposed to the extraneous conduct during deliberations. Additionally, because the court individually examined each juror, we conclude that the court implicitly found the extraneous conduct had the potential to be prejudicial. Thus, the record reveals that the trial court properly applied the procedures set forth in *Harper v. People, supra,* to assess any prejudice.

 Inquiries made under *Harper v. People, supra,* "must be conducted in the framework of the facts of each case, and the trial court has broad discretion in deciding the ultimate issue of whether the [improper material] prejudiced the defendant's right to a fair trial." *Harper v. People, supra,* 817 P.2d at 83–84. Based on this record, we find no abuse of the trial court's broad discretion in concluding that the jurors would start deliberations anew and would put aside the extraneous information. *See also People v. Ferrero, supra* (applying an abuse of discretion standard).

Thus we conclude that the trial court properly denied a mistrial.

## IV.

 Finally, defendant alleges structural error related to the trial court's sentence in the aggravated range, based upon the court's unsupported factual finding of a "cooling off period," under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We find no error.

A division of this court recently determined that *Apprendi* is not applicable when the defendant receives a sentence to which he or she was exposed by the original charge. *See People v. Allen,* 43 P.3d 689 (Colo.App. 2001). The *Allen* division ruled that *Apprendi* does not prohibit "the trial court, in its discretion, to sentence in aggravated or mitigated ranges based on unspecified extraordinary aggravating or mitigating factors or circumstances particularized to the defendant or the offense." *People v. Allen, supra,* 43 P.3d at 693; *see also People v. Gardner,* 55 P.3d 231 (Colo.App. 2002). We conclude that the rationale of *People v. Allen, supra,* is dispositive of defendant's argument, and we follow it here.

Furthermore, with regard to defendant's assertion that the court's finding of a "cooling off period" was not supported by the evidence, our review of the sentencing ruling reveals that the actual basis of the court's decision to sentence defendant in the aggravated range was the horrific nature of the crime. *See People v. Flores,* 757 P.2d 159 (Colo.App.1988).

Judgment and sentence affirmed.

Judge ROY and Judge DAILEY concur.